**BOWLES, Adm'r, Office of Price Administration, v. AMERICAN BREWERY, Inc.**

No. 5267.

Circuit Court of Appeals, Fourth Circuit.

Jan. 3, 1945.

Albert M. Dreyer, Atty., Office of Price Administration, of Washington, D. C. (Thomas I. Emerson, Deputy Administrator for Enforcement, Fleming James, Jr., Director, Litigation Division, David London, Chief, Appellate Branch, and Edward H. Hatton, Atty., all of Washington, D. C., Daniel B. Leonard and Francis Key Murray, Attys., both of Baltimore, Md., and Paul Ross, Regional Enforcement Executive, Office of Price Administration, of New York City, on the brief), for appellant.

Wilson K. Barnes, of Baltimore, Md. (Carman, Anderson & Barnes, of Baltimore, Md., on the brief), for appellee.

Before PARKER and DOBIE, Circuit Judges, and HARRY E. WATKINS, District Judge.

PARKER, Circuit Judge.

This is an appeal from a judgment dismissing an action brought by the Administrator, Office of Price Administration, to recover damages from the American Brewery, Inc., pursuant to section 205(e) of the Emergency Price Control Act of 1942, 56 Stat. 23, 34, 50 U.S.C.A.Appendix § 925(e), for violations of the General Maximum Price Regulation, 7 Fed.Reg. 3153, in the sale of malt syrup at prices in excess of the maximum price allowed by the regulation. The complaint alleged that the defendant manufactured from cereals malt syrup for sale in the domestic brewing industry; that, between January 19, 1943 and December 31, 1943, it made sales at prices in excess of the highest price charged in March 1942; and that the syrup so sold was purchased by buyers for use or consumption in the course of trade or business. A motion was made to dismiss the action on the ground that the syrup was not subject to price regulation during the period when the sales were alleged to have been made. The court sustained the motion (56 F.Supp. 82) and plaintiff has appealed.

We are not here concerned with the validity of the price fixing regulation, the violation of which furnishes the basis of the suit. It is well settled that this is a matter within the exclusive jurisdiction of the Emergency Court of Appeals. See sec. 204(d) of Emergency Price Control Act of 1942, 56 Stat. 23, 50 U.S.C.A.Appendix § 924(d); Yakus v. United States, 321 U.S. 414, 429, 64 S.Ct. 660, 669 et seq. That court is given exclusive jurisdiction over questions as to the validity of price regulations, whether such validity be tested by constitutional requirement, by the grant of power in the statute under which they were adopted or by the modifications made in that grant of power by subsequent legislation. Cf. United States v. Pepper Bros. 3 Cir. 142 F.2d 340, 343. Whether the Administrator in promulgating a regulation has complied with statutory requirements is, of course, a question affecting the validity of the regulation, as to which exclusive jurisdiction is vested in the Emergency Court of Appeals. Rosensweig v. United States, 9 Cir., 144 F.2d 30.

The present appeal involves but four questions which we can consider, viz.: (1) Whether a ceiling price was established for malt syrup under the general maximum price regulation; (2) if so, whether the ceiling was repealed by the Inflation Control Act of 1942, 50 U.S.C.A.Appendix §§ 901, 961 et seq. or Executive Order No. 9250 promulgated thereunder, 50 U.S.C.A. Appendix § 901 note; (3) whether the provision of section 205(e) of the Emergency Price Control Act under which this suit is brought is valid and constitutional; and (4) whether the suit should be dismissed because there is no allegation that it was authorized by the Secretary of Agriculture or instituted by one of the attorneys authorized to institute such proceedings by General Order No. 3 of the Office of Price Administration.

## 1. Ceiling Price Was Established

The malt syrup produced by the defendant was unquestionably covered by the maximum price regulation. That regulation, as the administrator said in his first quarterly report to Congress, applied to prices at all levels—manufacturing, wholesale and retail—of every commodity or product, domestic or imported, that was neither covered by a separate O.P.A. regulation nor specifically excluded. The pertinent parts of the regulation are as follows:

"1499. 1 * * * (a) No person shall sell or deliver any commodity, and no person shall supply any service, at a price higher than the maximum price permitted by this General Maximum Price Regulation; * * *".

"1499. 2 *Maximum prices for commodities and services; General provisions.* Except as otherwise provided in this General Maximum Price Regulation, the seller's maximum price for any commodity or service shall be: (a) In those cases in which the seller dealt in the same or similar commodities or services during March 1942: The highest price charged by the seller during such month—(1) for the same commodity or service; * * *".

The regulation, in section 1499.9, contained a list of commodities excepted from its provisions, including raw and unprocessed agricultural commodities and certain agricultural products which had been processed; but malt syrup was not embraced in the list of excepted commodities. It is clear, therefore, under the principle expressio unius est exclusio alterius, that malt syrup is not excluded by the excepting provision of the regulation but falls within the general provision establishing ceiling prices.

■ It is argued that the regulation should be construed as not applicable to malt syrup because it is said that such syrup is an agricultural commodity, that no action may be taken with respect to an agricultural commodity without the approval of the Secretary of Agriculture under section 3(e) of the Emergency Price Control Act, 50 U.S.C.A.Appendix § 903 (e), and that there is no allegation that the regulation had the approval of the Secretary of Agriculture. Since the regulation clearly covers all commodities not excepted from its provisions and malt syrup is not excepted, the question raised by this argument is simply whether the regulation is valid as applied to malt syrup, a question of which the Emergency Court of Appeals has exclusive jurisdiction; but, if it be treated as properly a question of interpretation, we think that there is nothing whatever in defendant's contention, since it is perfectly clear that malt syrup is not an agricultural commodity within the meaning of section 3(e) of the Act.

■ Malt syrup is a syrup used in the manufacture of beer and is made from barley malt. It is manifestly not a raw or unprocessed agricultural commodity but a commodity processed or manufactured from an agricultural commodity. Section 3 of the Emergency Price Control Act, 50 U.S.C.A.Appendix § 903, makes a clear distinction between such commodities. Subsection (a) of that section forbids the establishment of maximum prices for agricultural commodities at less than certain prices, whereas subsection (c) forbids the establishment of maximum prices for commodities processed or manufactured from an agricultural commodity below a price which "will reflect" those prices to producers of the commodities from which they are processed or manufactured. The prices of "agricultural commodities" which are taken as standards under subsection (a) are to be determined and published by the Secretary of Agriculture; and the prohibition of subsection (e) upon which reliance is placed is that no action shall be taken by the price administrator "with respect to any agricultural commodity" without the prior approval of the Secretary of Agriculture. It is perfectly clear, therefore, from the language of the statute itself, that this prohibition has relation to the agricultural commodities dealt with in subsection (a) and not to the processed or manufactured commodities dealt with in subsection (c). United States v. Charney, D.C., 50 F.Supp. 581, 583.

That this is the correct interpretation of subsection (e) is clearly shown by its history. That subsection was added to section 3 of the act through an amendment offered by Senator Bankhead. The amendment, as originally offered, prohibited action without approval by the Secretary of Agriculture "with respect to any agricultural commodity *or commodity processed or manufactured in whole or substantial part from any agricultural commodity.*" Before the adoption of the amendment, however, the words above italicized were stricken from it; and the debate with respect thereto shows clearly that it was the intention of Congress that commodities processed or manufactured from agricultural commodities should not be included within its prohibition. 88 Cong. Record 160, 173, 180, 186, 77th Cong. 2nd Sess.; 9 Law and Contemporary Problems p. 39.

2. Ceiling Price Not Repealed or Suspended

■ There is nothing in the Inflation Control Act of Oct. 2, 1942, 50 U.S.C.A.

Appendix §§ 901, 961 et seq. or in Executive Order No. 9250 adopted Oct. 2, 1942 pursuant thereto, which repeals or suspends in any way the ceiling price on malt syrup. On the contrary, it is expressly provided by section 7(c) of that Act, 50 U.S.C.A. Appendix § 967(c):

"Nothing in this Act shall be construed to invalidate any provision of the Emergency Price Control Act of 1942 (except to the extent that such provisions are suspended under authority of section 2), or to invalidate any regulation, price schedule, or order issued or effective under such Act."

█ That it was not intended that this statute should repeal any regulation or price schedule is made abundantly clear in the Senate Report on this section (Senate Report No. 1609, 77th Cong. 2nd Sess.(1942) at p. 10), which states:

"Section 7(c) provides that nothing in the resolution shall be construed to invalidate any provision of the Emergency Price Control Act (except sections 3(a) and 3(c) of such Act) *or to invalidate any regulation, price schedule, or order issued or effective under such Act. This section is intended to make it clear that any regulation heretofore or hereafter issued and valid under the Emergency Price Control Act is not in any way repealed.*" (Italics supplied.)

See also statement of Senator Brown, 88th Cong. Record 7982; 56 Stat. 765, 50 U.S.C.A.Appendix § 961 et seq.

█ Under section 2 of the Act the President was authorized to suspend the provisions of sections 3(a) and 3(c) of the Emergency Price Control Act, and Executive Order No. 9250 proceeded to suspend them "to the extent that such provisions are inconsistent with any or all prices established under this order for agricultural commodities, or commodities manufactured or processed in whole or in substantial part from an agricultural commodity." There is nothing in this, however, which affects in any way any ceiling prices theretofore determined. Section 3(a) forbade the fixing of maximum prices for agricultural commodities below certain prices as fixed by the Secretary of Agriculture, and section 3(c) forbade the fixing of prices of commodities processed or manufactured from agricultural commodities below a price reflecting the former prices; and these prohibitions were all that was sus-

pended by the executive order. The prohibitions might have invalidated certain maximum prices in the absence of the executive order; and the effect of the order was clearly, not to invalidate such prices, but to remove a factor which might result in their being invalidated.

There is manifestly nothing in the contention that existing maximum prices on agricultural commodities and commodities processed therefrom were suspended because the executive order provided that they should be stabilized, so far as practicable, on the basis of levels which existed on September 15, 1942. Not all such commodities were covered by the maximum price regulation fixing ceiling prices with reference to prices prevailing in March 1942. Where, as here, ceiling prices had been fixed on that basis, September prices were presumptively the same and there was no inconsistency. Where, however, prices of agricultural commodities and commodities processed from agricultural commodities had not been fixed on the basis of March prices because of the prohibition contained in sections 3(a) and 3(c) of the Emergency Price Control Act, it was necessary to empower the President in the Inflation Control Act to suspend these sections; and the evident purpose of the executive order was to curb inflation by prescribing maximum prices for such commodities. There is no reason for believing that there was any intention to suspend existing maximum prices either by the Inflation Control Act or by the executive order.

### 3. Provision Authorizing Suit is Constitutional

█ Section 205(e) of the Emergency Price Control Act, 50 U.S.C.A.Appendix 925(e), in authorizing suits for treble damages for sales in excess of prices fixed by maximum price regulations, distinguishes between sales made to those who buy for use or consumption other than in the course of trade and business and sales made where use in the course of trade or business is intended. The effect of this, of course, is to distinguish between sales made at the retail level and those made at the wholesale level. In the former case the buyer is given the right of action for treble damages, and in the latter case it is given to the Price Administrator. The defendant contends that this is an unconstitutional classification.

■ Assuming that defendant is in position to raise this contention, we see nothing in it. Congress may very well have thought that one who has purchased at wholesale, and who, in all probability, has passed on to his customers the excess price which he has paid, ought not be allowed to recover it, particularly as he himself is in equal fault with the person from whom he is seeking recovery. Giving the action for damages to the buyer at the retail level, furthermore, will be a great aid to the government in enforcing the act and will seldom result in fraudulent or unfair litigation, whereas actions for damages for excessive prices at the wholesale level would seldom be brought by private persons except in an effort to take unfair advantage of the provisions of the act. It is well settled that where the reasonableness of the classification of a statute is called in question, "if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts must be assumed." Lindsley v. Natural Carbonic Gas Co. 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369, Ann.Cas.1912C, 160; Currin v. Wallace 306 U.S. 1, 14, 59 S.Ct. 379, 83 L.Ed. 441; Madden v. Kentucky 309 U.S. 83, 88, 60 S.Ct. 406, 84 L. Ed. 590, 125 A.L.R. 1383; Tigner v. Texas 310 U.S. 141, 149, 60 S.Ct. 879, 84 L.Ed. 1124, 130 A.L.R. 1321.

### 4. Authorization of Suit

Defendant contends that the suit should be dismissed because there is no allegation in the complaint (1) that the suit was authorized by the Secretary of Agriculture or (2) that its institution was authorized by General Counsel of the Office of Price Administration or any of the other attorneys mentioned in General Order No. 3 of the Office of Price Administration naming the attorneys authorized to institute civil proceedings.

■ The point with respect to authorization by the Secretary of Agriculture is that under section 3(e) of the Emergency Price Control Act, 50 U.S.C.A.Appendix § 903(e), no action may be taken by the administrator with respect to any agricultural commodity without the approval of the Secretary of Agriculture; and what we have said under the discussion of the first point is a sufficient answer to this, i. e. malt syrup is not an agricultural commodity within the meaning of section 3(e). It is clear, also, that the prohibition of section 3(e) of the act has no relation to such action as the institution of suits under section 205(e).

■ As to there being no allegation that suit was authorized under General Order No. 3, it is sufficient that the complaint was signed by attorneys admitted to practice in the court. As said by Judge Sanborn in In re Gasser 8 Cir. 104 F. 537, 538, quoted by Judge Goodrich in In re Pearl Coal Co. 3 Cir. 115 F.2d 158, 159: "The appearance in court of an attorney at law licensed to practice there carries with it the presumption of authority to appear and act for his client in the proceeding in which he seeks to represent him. His mere appearance is prima facie evidence that he is duly authorized to represent and act for his client, and this presumption is conclusive in the absence of countervailing evidence." An appearance by a practicing attorney creates a presumption that he has authority to act and the law casts the burden of proving the contrary upon the one asserting it. Paradise v. Vogtlandische Maschinen-Fabrik et al. 3 Cir., 99 F.2d 53, 55; Osborn v. Bank of the United States 9 Wheat. 738, 829-831, 6 L.Ed. 204; 5 Am.Jur. 307.

For the reasons stated, the judgment dismissing the action will be reversed and the cause will be remanded to the court below for further proceedings not inconsistent herewith. A motion to dismiss the appeal has been made, but this will be denied.

Reversed.