BOWLES, Price Administrator, v. EAST-
ERN SUGAR ASSOCIATES et al.
Civil Action No. 2345.

District Court, D. Maryland.

Jan. 15, 1946.

510

Francis Key Murray, of Baltimore, Md., and Atwood Cranston, and Wm. W. Kapell, both of Washington, D. C., for Price Administrator.

Harry N. Baetjer and Edward H. Burke, both of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a suit whereby the Price Administrator, Office of Price Administration, seeks an injunction and treble damages under Section 205(a) and (e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 925(a) and (e), against 'Eastern Sugar Associates, hereinafter called the Sugar Company, for alleged violation of ceiling prices for services which it obligated itself to render in connection with the sale of raw Puerto Rican cane sugar to the other defendant, The Coca Cola Company, for a period of three years, pursuant to a written contract dated September 23, 1943. These services consisted of furnishing storage facilities for the sugar, including the building of warehouses; substitution of new sugar for the old remaining at the end of each year; sharing the losses resulting from storage, and bagging and rebagging the sugar as stipulated in the contract. The contract price for these services was $1.80 per bag of 250 pounds for the entire three year term of the contract, or a total payment of $720,000 on 402,010 bags stored, subject to certain adjustments.

As originally filed, the complaint also claimed that the ceiling price for the sugar itself, stipulated in a written contract made contemporaneously with the contract for services in connection with the sugar, as differentiated from the ceiling price for these services themselves, had been violated. However, subsequently and prior to the hearing, the Coca Cola Company entered into a contract with the Commodity Credit Corporation, an agency of the Government, whereby it sold to that corporation all of the sugar covered by its contract with the Sugar Company, and also transferred to the Commodity Credit Corporation all of its rights under the contract which it had with the Sugar Company for services as aforesaid. Thereupon, the Government dismissed the present suit as to the Coca Cola Company for reasons which are not entirely clear on the record but which we need not here consider, with the result that there is before us merely a complaint for damages for the sale of services by the Sugar Company at a price in excess of the alleged ceiling price for such services, and for an injunction against carrying out the provisions of the service contract in so far as they may violate this alleged ceiling price.

The Government claims that there has been an overcharge for these services in the amount of $285,829.20, and damages treble that amount are sought, or $857,-487.60. Since, as already stated, the service contract was for a period of three years, it has been stipulated that for the purposes of the present case the Sugar Company is to be treated as though it had completely performed these services for the full three year period. As a matter of fact, the contract had been completely executed at the time of the original filing of this suit, namely, September 23, 1944, except the last installment, namely, $180,-000, due the Sugar Company for servicing the sugar had not, at that time, become due and payable.

The Sugar Company claims that it is guilty of no ceiling price violation with respect to the services which it rendered pursuant to the written contract with the Coca Cola Company, for two main reasons: (1) Since the services were rendered by the Sugar Company in Puerto Rico, they were excluded from any ceiling price regulation promulgated by the Office of Price Administration which might otherwise have been applicable; and (2) failure on the part of the Office of Price Administration to disapprove, until October 13, 1943, the price for these services as set forth in the service contract was deemed, pursuant to the price regulations effective at the time, a binding approval of such price.

At the close of the presentation of the case for the Administrator, counsel for the Sugar Company moved for dismissal of the suit on these two grounds. If either one of them be sound, the suit must be dismissed.

■ It is to be noted at the outset that the Sugar Company claims that it is not here contesting the validity as such of any ceiling price regulation, but claims that there was no ceiling price in effect applicable to the services in question which it rendered, and that, therefore, it has been guilty of no ceiling price violation. If this contention of the Sugar Company be sound, then this Court has jurisdiction of the case; but if the validity of a price regulation be in fact in issue, this is a matter within the exclusive jurisdiction of the Emergency Court of Appeals and cannot be adjudicated in the present proceeding. Emergency Price Control Act of 1942, §§ 204(d), 205(e), as amended, 50 U.S.C.A. Appendix, §§ 924(d), 925(e); Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 321 U.S. 503, 64 S. Ct. 641, 88 L.Ed. 892; Bowles v. American Brewery Co., 4 Cir., 146 F.2d 842; Bowles v. Meyers, 4 Cir., 149 F.2d 440.

■ We believe that the Sugar Company's contention is sound, namely, that this Court does have jurisdiction to adjudicate the issues here raised because they do not in fact involve the validity per se of an order or of a price regulation but, as the Sugar Company contends, involve the question whether there was, for the period in question, a ceiling price applicable to the services here involved, rendered by the Sugar Company. In other words, we believe that the issues here presented are properly before us, being akin to the issues raised in Bowles v. American Brewery, supra, where the Circuit Court of Appeals for this Circuit held that this Court had rightly assumed jurisdiction in a suit, where a motion was made by the defendant to dismiss the action on the ground that the commodity there in issue was not subject to any price regulation during the period when sales were alleged to have been made by the defendant.

■ The existence in the present case of an order of the Price Administrator based on a price regulation, whereas in the American Brewery case the suit was predicated on an alleged violation of a price regulation alone, is not, we think a material distinction. The Act, after authorizing the Administrator to issue such regulations and orders as he may deem necessary and proper in order to carry out the Act's purposes and provisions, denies jurisdiction to any Court, other than the Emergency Court, "to consider the validity of any such regulation, order, or price schedule * * *." Section 204(d), 50 U. S.C.A.Appendix, § 924(d). So the fact that both a regulation and an order based on that regulation are involved in the same controversy, does not affect this Court's jurisdiction any more than it would be affected if only a regulation were involved. The distinction is between refusal to obey an order of the Administrator based upon a price regulation, or to con-

form to a price regulation on the ground of the invalidity of the regulation or order, or both, and refusal to do so on the ground that no order or price regulation was in fact in force at the time in question, applicable to the commodity or services rendered. That such distinction exists in the present case can only be completely understood by a review of the sequence of regulations upon which the Government relies, but which the Sugar Company asserts are not applicable to the services which it rendered and which are here in issue.

In considering this sequence we will divide the matter into two parts: First, that which has to do with the Sugar Company's first ground of defense, namely, that apart from all other considerations, since the services were performed by the Sugar Company in Puerto Rico, they are expressly excluded from all ceiling price regulations; and second, that which has to do with the Sugar Company's second ground of defense, namely, that inaction on the part of the Office of Price Administration resulted, by virtue of its own express regulations, in authorizing the price for these services which was stipulated in the written contract pursuant to which these services were rendered.

On the first point, we find the regulations to be as follows: (1) Effective August 19, 1942, Section 1499.119 of "Maximum Price Regulation No. 165, As Amended—Services," provided: "Applicability. The provisions of Maximum Price Regulation No. 165, as amended, shall be applicable to the continental United States and the District of Columbia, but shall not be applicable to the territories and possessions of the United States." (2) However, there was, on September 28, 1943, the date when the contract for services here in issue became effective, and there has been in effect, continuously thereafter up to the present time, the following provision, Section 1499.22 of General Maximum Price Regulation— a blanket regulation purporting to establish maximum selling prices not otherwise established. It is to be noted that this provision is in direct conflict with the provision in Maximum Price Regulation No. 165, just quoted, in so far as territories and possessions are concerned: "Applicability. The provisions of this General Maximum Price Regulation shall be applicable to the United States, its territories and possessions, and the District of Columbia." (3) Section 1499.119 of Maxi-

mum Price Regulation No. 165, above quoted, was amended July 1, 1944, effective August 1, 1944, to read as follows:

"Section 1. Services covered. This regulation covers all services previously covered by Maximum Price Regulation No. 165, as amended, except as indicated below.

"Sec. 22. Applicability; base dates for territories and possessions—(a) Applicability. This regulation applies to services supplied in the 48 States of the United States, the District of Columbia, and the territories and possessions of the United States. * * *

"(3) Puerto Rico and the Virgin Islands. The base date for Puerto Rico and the Virgin Islands shall be April 10, 1942 to May 10, 1942, and all reference to March 1942 shall be changed to the period from April 10, 1942 to May 10, 1942. * * * *"

The Government attempts to resolve this glaring inconsistency in the regulations by saying that Maximum Price Regulation No. 165, in so far as the services here in issue are concerned, must be treated as distinct from General Maximum Price Regulation; that the former, as a regulation, never embraced these services; that they are embraced by the latter which merely incorporated one of the pricing methods found in the former, namely, in Maximum Price Regulation No. 165, and that, therefore, it is immaterial as to when Maximum Price Regulation No. 165 was amended with respect to its geographical application.

As opposed to this, counsel for the Sugar Company contend that Maximum Price Regulation No. 165 applied only to ascertaining the applicable price through the filing of an application for matters that were covered by that regulation; that no price regulation of any sort pertaining to transactions in Puerto Rico was covered by this regulation until the amendment of July 1, 1944, extending it to Puerto Rico; in other words, that if a price could be fixed for services in Puerto Rico by the other regulation upon which the Government relies, namely, General Maximum Price Regulation, adopting, by reference, Maximum Price Regulation No. 165, this made the latter regulation applicable only to the extent that, by its own terms, it was declared to be applicable, and it was expressly inapplicable to Puerto Rico until amended nearly a year after the contract

in issue in the present case became effective.

▮ Although the draftmanship displayed in the regulations which we have just analyzed is inexcusably poor and creates a situation which is calculated to befuddle even the most astute legal mind, not to speak of the general public with respect to whom the regulations are promulgated, we believe, nevertheless, that the fairest interpretation to be placed upon them, considered as a whole, is that interpretation which counsel for the Sugar Company have insisted upon, because it has the merit of applying a literal interpretation to plain words when found to be in conflict with other plain words if likewise literally interpreted. In short, we believe that if the Office of Price Administration, in drafting its regulations, is unable to say what it means in reasonably clear language, the public should not be penalized, but should be given the advantage of the ambiguity.

▮ It follows that our conclusion with respect to this first point is alone sufficient ground for granting the Sugar Company's motion to dismiss the suit. However, because of the ambiguity in the regulations, and the importance of the issues involved, we will also consider the second ground advanced by the Sugar Company for dismissal of the complaint, namely, that the failure on the part of the Office of Price Administration to disapprove of the price for the services rendered by the Sugar Company until October 13, 1943, was tantamount, under the price regulations effective at the time, to a binding approval of such price.

On this point, the following are the material facts: The Sugar Company made an application on September 18, 1943, for approval of the price for its services, as set forth in the written contract with the Coca Cola Company. At this time there was in force, effective since September 9, 1942, the following regulation: Amendment 25 to General Maximum Price Regulation, Sec. 1499.3(d) reading as follows: "In the case of a sale of a commodity the price for which includes the supply of a service of substantial value and which cannot be priced under paragraph (a) of this section, [and it is conceded that such is the case here], or in the case of the sale of a service, the maximum price shall be a price determined by the seller by applying the first applicable pricing method

of the pricing methods stated in sec. 1499.-102 of Maximum Price Regulation No. 165, as amended." Section 1499.102 referred to contains the following provision (paragraph (d)) which it is agreed relates to the present situation: "If the seller did not supply any service during March 1942, and if the service to be priced is not the same as or similar to any service supplied during that month by a competitive seller of the same class, and if such service cannot be priced under section 1499.103 of this Maximum Price Regulation No. 165, as amended, a price approved by the Office of Price Administration. Application for such approval shall be made on Form 265.3 contained in Appendix C (section 1499.124) of this Maximum Price Regulation No. 165, as amended, and shall be filed in duplicate with the appropriate field office of the Office of Price Administration. The application shall contain (1) 'an appropriate description and identification' of the service for which a price is being reported; (2) a statement of the reasons why it can not be priced except under this paragraph (d); and (3) a statement of the proposed maximum price, setting forth separately the amount included for labor, the amount for materials, and the amount for overhead and profit. Unless the Office of Price Administration or an authorized representative thereof shall, by order mailed to the applicant within 10 days from the date of filing the application, disapprove the maximum price as reported, such price shall be deemed to have been approved, subject to disapproval or adjustment at any time by the Office of Price Administration."

The Sugar Company filed an application in conformity with the regulation just quoted on September 18, 1943, and pursuant to the express provisions of that regulation, unless the Office of Price Administration, "by order mailed to the applicant within 10 days from the date of filing the application, disapprove the maximum price as reported," such price was deemed to have been approved, "subject to disapproval or adjustment at any time by the Office of Price Administration." The Office of Price Administration took no action until October 13th, that is, nearly a month later, when it wrote the Sugar Company as follows: "It is the opinion of the National Office that the three year storage service charge proposed in the application would constitute an evasion of Revised Price Schedule No. 16 [which related solely to

ceiling prices on sugar, not services]. It is the further opinion of the National Office that the Eastern Sugar Associates has not submitted a sufficient economic justification for the institution of the new service proposed."

Thereafter, negotiations ensued between the Office of Price Administration and the Sugar Company, with a view to reaching some agreement as to what price for these services might be approved, but it was not until eleven months later, that is, on September 13, 1944, that the Office of Price Administration rendered any decision. On that date, it issued a new order fixing the price for the services at 3¢ per month for each bag of 250 pounds from October 15, 1943, for a period of three years, or $1.08 per bag. It is to be noted that no price whatsoever was established for the period of 17 days from September 28, the effective date of the contract, to October 15. As to this, counsel for the Office of Price Administration offer as an explanation merely that there was confusion as to the effective commencement date of the contract.

Relying upon the above regulations, the Sugar Company maintains that since it complied with all the requisite steps with respect to making application, and since the Office of Price Administration failed—as to which there is no dispute—to pass an order, and to give notification within the expressly prescribed ten day period, of disapproval of the application, the price applied for is to be treated as having been approved, and that the further provision that the price thus approved shall be "subject to disapproval or adjustment at any time by the Office of Price Administration," is not to be construed as meaning that disapproval or adjustment could be retroactive but merely prospective. Stress is placed upon the obvious hardship which would flow from giving retroactive effect to disapproval in the present case, which did not occur until almost a year after the services had been completely performed on the part of the Sugar Company.

■ We believe that the correctness of the Sugar Company's contention on this second point is inescapable. Regulations promulgated by the Office of Price Administration must be interpreted with full regard to mutuality, that is to say, the Government, just as much as the public, is to be bound by strict enforcement of the regulations, especially where, as in the

present instance, the meaning of the applicable regulation is entirely free from any real ambiguity. Certainly, there is no ambiguity with respect to the time within which the Office of Price Administration was required to disapprove the Sugar Company's application or suffer the effect of its failure so to do. To say that the proviso giving to the Office of Price Administration the right to disapprove or adjust "at any time" means to relate to the past as well as to the future, seems to us entirely illogical because it would at once destroy the full force and effect of the ten day provision. Even if we assume that the proviso is not free from ambiguity, certainly a court should be most reluctant to resolve the doubt in favor of the Office of Price Administration when, as in the present case, it has advanced no satisfactory reason for its inordinate delay in disapproving the price applied for, although it must have known that during these eleven months of inaction, the Sugar Company was relying upon the terms of its contract with the Coca Cola Company.

We have been referred to no court case embracing similar facts. But likewise, we have been referred to no case under the Emergency Price Control Act of 1942, or any other statute or regulation which supports the contention of the Office of Price Administration. On the contrary, see Bowles v. Griffin, 5 Cir., 151 F.2d 458, where it was held, in a suit brought under the same penalty section 205(e), 50 U.S.C.A.Appendix, § 925(e), involved here, that a rent director's retroactive order could not make penal, rent collections which were not penal when collected four or five months before. While this was a suit between buyer and seller in which the Administrator intervened, and therefore differs from the present action, nevertheless, as to both types of cases, Section 205 (e) provides that they are barred unless brought "within one year from the date of the occurrence of the violation." The present suit was brought on September 23, 1944. While a ceiling price was fixed by the Administrator on September 13, 1944, as herein explained, if there be any logic in the Administrator's contention, any violation of the alleged applicable regulations by the defendant must have occurred, if at all, long prior to that time, almost, if not in fact, beyond the year limit.

■ It is true that Section 205 (e) as amended by the Stabilization Extension Act

of 1944 was made applicable, effective June 30, 1944, to proceedings of the present kind "pending on the date of enactment of this Act and with respect to proceedings instituted thereafter." Section 108 (c), 50 U.S. C.A.Appendix, § 925 note. However, we believe this lends no support to the contention of the Office of Price Administration that even though, as here, a maximum price has, by the very language of the applicable regulation itself, become effective through failure to disapprove it within the specified time, since the regulation goes on to say that such price is "subject to disapproval or adjustment at any time," this is to be construed as meaning that disapproval or adjustment could be retroactive almost a year after the services to which the maximum price related, had been completely performed.

 Finally, we believe that the very language of the first of the provisions of the Emergency Price Control Act upon which the Office of Price Administration relies (Sec. 925(a) supports our conclusion. It provides that the relief afforded to the Administrator shall be "upon a showing" that acts or practices have been engaged in, or are about to be engaged in, which constitute or will constitute a violation of price regulation under the Act. We construe the word "showing" to mean a proper, adequate showing—one that appeals to the conscience of a court of equity, and not one based upon merely a fanciful theory. What shall this adequate showing be? By the express language of the Act, it contemplates proof that the alleged violator has either committed, or is about to commit a violation of the law. But here, if we treat the services performed by the Sugar Company—as we are satisfied we must—as a whole and not divisible under the three year contract, the alleged violation must have occurred, if at all, long before the order of September 13, 1944, was issued. Long prior to that time, the contract had been completely executed by both parties, except for the passing of final payment from the Coca Cola Company to the Sugar Company, and even as to this, there was an unqualified obligation on the part of the Coca Cola Company not to withhold such payment. Therefore, to all intents and purposes the entire contract had been completely executed before the order, upon which the Office of Price Administration relies had been issued. So,

the contract having been completed and the Government having intervened and bought the sugar from the Coca Cola Company, and having assumed the service or carrying charges, there appears to be nothing for this Court to enjoin the Sugar Company from doing in the future. In other words, to grant an injunction would be a futile thing.

 As respects the second provision of the Emergency Price Control Act upon which the Office of Price Administration relies (Sec. 925(e), its very language requires the conclusion that certainly in so far as treble damages are concerned, there is no basis whatsoever for such award. That section authorizes treble damages unless "the defendant proves that the violation of the regulation, order or price schedule in question was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation." Certainly, there is no ground for saying that the Sugar Company's conduct was wilful or that it failed to take practicable precautions under the circumstances as we have just analyzed them—circumstances which clearly show that the Sugar Company seasonably and in all good faith, endeavored to get the Office of Price Administration to act upon its application with respect to service charges before they were to become effective—even though under the then state of the regulations it was not, we believe, subject to any requirement to make an application, or to any price regulation as respects its services because rendered in Puerto Rico—and that upon the failure of the Office of Price Administration to act, the Sugar Company had the right under the existing regulations to proceed as it did pursuant to its contract with the Coca Cola Company. It is true that by proof of good faith and due care recovery may not be completely avoided. There may still be recovery of the overcharge, regardless of these defenses, if the Administrator proves the actual violation of an applicable order or regulation. See Bowles v. Franceschini, 1 Cir., 145 F. 2d 510; Bowles v. Hastings, 5 Cir., 146 F. 2d 94, 95. But, as herein stated, we find a complete lack of such proof in the present case.

An order will be signed, granting defendant's motion to dismiss the suit, for the reasons set forth in this opinion.