**PORTER, Adm'r, OPA, v. CITY OF CHARLESTON, W. VA., et al.**

**No. 5488.**

Circuit Court of Appeals, Fourth Circuit.
April 27, 1946.

---

David London, Chief, Appellate Branch, O.P.A., of Washington, D. C. (George Moncharsh, Deputy Adm'r for Enforcement, Milton Klein, Director, Litigation Div., and Albert M. Dreyer, Solicitor, all of Washington, D. C., and J. Gardner Ashcraft, and J. H. Hatcher, Jr., Enforcement Attys., O.P.A., both of Charleston, W. Va., on the brief), for appellant.

John N. Charnock, of Charleston, W. Va. (P. G. Meador, of Charleston, W. Va., on the brief), for appellees.

Before GRONER, Chief Justice of the United States Court of Appeals for the District of Columbia, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The Administrator of the O.P.A. seeks an injunction against the City of Charleston, West Virginia, to prevent the eviction of the occupants of certain houses located in the city in a slum area which was acquired by the City in the exercise of its power of eminent domain by judgment of condemnation rendered by the Circuit Court of Kanawha County. It is proposed to use the property as a community playground and recreational center. The Administrator contends that in the absence of a certificate from him the proposed eviction would violate the provisions of § 6(b) (1) of the Rent Regulation for Housing promulgated under the authority of the Emergency Price Control Act of 1942 as amended, 50 U.S.C.A.Appendix, § 901 et seq. The regulation provides that no tenant shall be removed or evicted on grounds, other than those which are excepted in the Act and are not relevant here, unless on petition of the landlord the Administrator certifies that the landlord may

pursue his remedies in accordance with the requirements of the local law. The District Judge dismissed the petition for injunction primarily for the reason that the relationship of landlord and tenant did not exist between the City and the occupants of the houses and that therefore the rent Regulation was not applicable to the case; and this appeal followed.

The housing accommodations consist in the main of twelve old wooden buildings or shacks in a poor state of repair, without ordinary facilities, occupied by approximately one hundred persons. The circumstances under which the controversy arises are described in the following excerpt from the opinion of the District Judge in a companion case involving an adjoining area on which the houses have been demolished.

"In February, 1945, pursuant to a bond election the voters of the City of Charleston authorized the issuance of bonds by the City for the acquisition and improvement of various parcels of ground as playgrounds and recreation centers. The property now under consideration is part of an area which was selected as a playground site to serve a neighborhood wherein it was thought that the concentration of population and other conditions were conducive to juvenile delinquency. Playground facilities are needed to correct these conditions.

The City acquired the property in the usual course by exercise of the power of eminent domain, and has now agreed with a contractor with reference to the construction of the project. The contractor is ready to begin work and the first step is removal or demolition of the houses. An order has been entered by the Circuit Court of Kanawha County vesting legal title and possession in the City, and a further order of the same court directed the Sheriff of Kanawha County to evict the persons living on the premises. The property involved is a small lot approximately 50 feet wide and 100 feet deep, which is crowded with small shacks and trailers which have heretofore housed some thirteen families, a part of whom have already vacated the premises."

■■ No question is or could be raised in this court as to the validity of the Regulation. See § 204(d) of the Act; Bowles v. American Brewery, 4 Cir., 146 F.2d 842, 844. Nor can it be successfully contended that either the Act or the Regulation does not apply to the City of Charleston for in both enactments the term "person" is defined to include "the United States or any agency thereof, or any other government, or any of its political subdivisions, or any agency of any of the foregoing." See § 302(h) of the Act and § 13(5) of the Regulation. City of Dallas v. Bowles, Em.App. 152 F.2d 464.

■ Moreover, it seems well established that the Regulation can be invoked to restrict the activities of a municipal corporation in either the proprietary or governmental field; for it was pointed out in Case v. Bowles, 66 S.Ct. 438, that the Emergency Price Control Act, as an exercise of the war power of the federal government, is applicable to a state not only when it engages in business but also when it exercises its essential governmental functions.

■ We think, however, that the decision below was correct because neither the relationship of landlord and tenant nor any substantially similar relationship existed between the City and the occupants of the houses when the eviction proceedings were instituted in the State Court and the application to the Federal Court for an injunction was filed. Section 6(a) of the Regulation is denominated "Removal of Tenant" and contains restrictions upon the ordinary power of a landlord to evict a tenant in possession of a housing accommodation. The terms "landlord" and "tenant" are defined in § 13(8) and § 13(9) of the Regulation as follows:

"§ 13(8). 'Landlord' includes an owner, lessor, sublessor, assignee or other person receiving or entitled to receive rent for the use or occupancy of any housing accommodations, or an agent of any of the foregoing."

"§ 13(9). 'Tenant' includes a subtenant, lessee, sublessee, or other person entitled to the possession or to the use or occupancy of any housing accommodations."

In the present situation, which arose before the application for injunction was

filed, the City was not a landlord entitled to receive rent from the occupants, and the occupants were not tenants or persons entitled to the use or accommodation of the houses. The property was acquired for a specific purpose under the power conferred upon the city by § 485 of the West Virginia Code to purchase and hold real estate for the good order, government and welfare of the municipality; and no rent was at any time solicited or received. The judgment of condemnation issued by the Circuit Court of Kanawha County on February 27, 1946, showed that the City had fully paid the compensation for the property ascertained by the jury in the condemnation suit and adjudicated that the City was vested with the title in fee simple and was entitled at once to enter and take possession and use the property. It was under this decree that the City sought the aid of the State Court to evict the occupants. It is obvious that at that time all rights of the former owners and occupants of the property were vested in the City by the judgment of condemnation and that the relationship of landlord and tenant did not exist. Since the Regulation is designed to protect tenants or other persons entitled to the possession or use of housing accommodations, it did not in our opinion restrict the right of the City to evict the occupants and proceed with the project which it had in mind.

Our attention is called to certain decisions in which the courts have endeavored to promote the salutary purposes of the Act by giving a liberal interpretation to the provisions of § 6 of the Regulation. In Adams, Rowe & Norman, Inc. v. Bowles, Em.App., 144 F.2d 357, it was held that the Administrator had authority under the Act to regulate the rents of houses furnished by a corporation to its employees; and in Home Svgs. Bank v. Hunter, 180 Misc. 1, 42 N.Y.S.2d 557, Long Branch Banking Co. v. Howland, 1 O.P.A. Decisions, 1836, Pfalzgraf v. Voso, 184 Misc. 575, 55 N.Y.S.2d 171, and Edison Svgs. & Loan Ass'n v. Stamberger, 184 Misc. 52, 53 N.Y.S.2d 578, it was held that a purchaser of property at a foreclosure sale may not evict a tenant of the mortgagor without the certificate of the Administrator. The courts referred to the provisions of § 6 of the Regulation that no tenant shall be removed by action to recover possession or otherwise, and to the provision of § 2(d) of the statute authorizing the Administrator to regulate practices relating to the recovery of possession of housing accommodations, and reached the conclusion that such broad language should not be limited to technical landlord and tenant actions.

■■ We have no disposition to differ with or diminish the weight of these authorities. That the Congress and the Administrator were endeavoring to protect the occupants of houses from exorbitant exactions by broad and general enactments is too clear for argument; and it cannot be supposed that it was the intention to protect the tenant of a mortgagor whose technical right of possession is not extinguished by foreclosure because his lease antedates the mortgage and to deny protection to a tenant who came in under the mortgage. The tendency of the courts to pursue the spirit rather than the terms of the Regulation in a technical sense is to be commended; but we do not think it is reasonable to suppose that the unusual situation that now confronts us was in mind when the Regulation was framed. It was designed to protect persons who do not own the houses they occupy from the exorbitant rentals likely to follow the housing shortage caused by the war, and to that end evictions from property that is subject to rental for residence purposes in the ordinary sense are restricted. Even the states and other agencies of government are subjected to the regulations so that they may not rent property or sell goods above ceiling prices; but nothing of this kind is contemplated in the pending case. In short, we reach the conclusion that the Regulation was not intended to interfere with the right of the states or municipalities to acquire property by condemnation and to use it to carry out the functions of government. Our holding is limited to this point. The judgment of the District Court is

Affirmed.