BOWLES, Administrator, Office of Price Administration, v. CASE, Commissioner of Public Lands of State of Washington, et al.

No. 10916.

Circuit Court of Appeals, Ninth Circuit.

May 28, 1945.

Fleming James, Jr., Director, Litigation Division, OPA, Abraham Glasser, Samuel Mermin, Sp. Appellate Attys., and Albert M. Dreyer, Atty., OPA, all of Washington, D. C. (David London, Acting Regional Litigation Atty., OPA, Washington, D. C., of counsel), for appellant.

Smith Troy, Atty. Gen., State of Washington, and R. A. Moen, Asst. Atty. Gen., for appellee, Otto A. Case, etc.

W. Z. Kerr, Stephen V. Carey, Evan S. McCord, and S. N. Greenleaf, all of Seattle, Wash., for appellee Soundview Pulp Co.

Before HEALY and BONE, Circuit Judges, and McCOLLOCH, District Judge.

HEALY, Circuit Judge.

Involved here is an appeal by the Administrator of the Emergency Price Control

Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., from a judgment denying injunctive relief. The principal defendant in the suit is the Commissioner of Public Lands of the State of Washington, to whom we shall refer as the Commissioner.

In September 1943 the War Production Board requested the Commissioner to make available for sale the timber on the south half of a designated section of state-owned school lands. The Commissioner caused the timber to be appraised and gave notice that it would be sold at public auction to the highest bidder.[1] At the auction there were two bidders, the Soundview Pulp Company and the Coos Bay Pulp Corporation. The bid of Soundview was $86,336.39. That of Coos Bay was $77,853.25, which was the maximum price of the timber as determined under OPA Regulation 460. The official in charge of the sale accepted Soundview's bid. Soundview was thereupon informed by the Office of Price Administration that its bid was in excess of the price ceiling fixed by the regulation, hence a purchase at that figure would offend against the Act.

There followed a series of suits in the Washington courts, participated in by the Commissioner on the one hand and the Soundview and Coos Bay companies on the other, the several suits being ultimately consolidated for trial. On appeal it was held (by a sharply divided court) that the state owned the timber in its sovereign and governmental capacity and that Congress did not intend the Emergency Price Control Act to apply to a state in respect of the sale of a commodity so owned, it being conceded, however, that the Act affects sales by the state of property held in a proprietary capacity. Soundview Pulp Co. v. Taylor, Commissioner, 21 Wash.2d 261, 150 P. 2d 839, 844. The court pointed to the terms of the Enabling Act providing that all lands granted the state for educational purposes should be disposed of only at public sale for not less than $10 per acre, the proceeds to constitute a permanent school fund; and it quoted a similar provision of the State Constitution requiring such sales to be made at auction to the highest bidder. "It therefore follows," said the court, "that in selling timber grown on state school lands the Commissioner of Public Lands must do so in accordance with the Enabling Act and the Constitution and statutes of the State of Washington irrespective of any order or regulation of the Office of Price Administration."

The Administrator then brought this suit against the Commissioner and Soundview, asking that they be enjoined from consummating the proposed transaction. A temporary restraining order was granted, but at the conclusion of the trial the order was vacated and the complaint dismissed. However, upon stipulation, it was ordered that the status quo be maintained pending an appeal. The views announced by the trial court substantially conformed with those of the Washington Supreme Court heretofore analyzed. While the judge conceded that Regulation 460 in terms applies to the subject matter, it was thought that despite the provisions of § 204(d) of the Act the extraordinary remedy of injunction should not be granted where the court is persuaded that the regulation goes beyond the terms of the statute.

Maximum Price Regulation No. 460 became effective August 31, 1943. It establishes maximum prices for western timber and covers all sales of such timber "if the primary purpose of the purchase is the acquisition of timber for commercial conversion into timber products." States and their political subdivisions are expressly made subject to the terms of the regulation. Section 5 establishes the method for computing the maximum legal prices of publicly-owned timber.[2]

Normally, it would seem that § 204 (d) does not, in a judicial proceeding other than in the Emergency Court, permit of questioning the validity of a regulation by the process of construing the statute. Two state courts of last resort, in considering the problem as related to the sale of publicly-owned property, have thought otherwise.[3] In the circumstances we hesitate to rest decision on the ground that such mode of attack is here foreclosed, persuad-

---

[1] The value as determined by the appraisal was $60,354.50.

[2] The computation is made by taking the appraised value, based on appraisal principles used by the public agency during 1941, plus specific additions for timber sold per 1000' log scale; and, for timber sold on a lineal foot basis, the computation is made by adding a flat 20% to the appraised value.

[3] Soundview Pulp Co. v. Taylor, supra; Twin Falls County v. Hulbert, Idaho, 156 P.2d 319.

ed, as we are, that Regulation 460 has ample statutory warrant.

■■ In the Act itself § 302(h) the term "person" is defined as including "the United States or any agency thereof, or any other government, or any of its political subdivisions, or any agency of any of the foregoing: Provided, That no punishment provided by this Act shall apply to the United States, or to any such government, political subdivision, or agency." So comprehensive is the definition that nothing short of an express exclusion of the states and their political subdivisions would serve to exempt sales made by them from the sweep of the statute.[4] Nor is there anything in the language of the Act, or in its history or purpose, suggestive of the exemption of commodities owned in a governmental capacity. Cf. United States v. California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567. The aim of the legislation is the control of commodity prices irrespective of who owns the commodity or in what capacity it is held.[4a] Certain of the Western states, as Congress well knew, are among the large owners of timber.[5] If they were left exempt, their sales at unrestricted competitive bidding would disrupt attempts looking toward the control of the price of this scarce and essential commodity, as well as the price of the processed product. Nor would the evil necessarily stop there. It is a commonplace that inflation at one point tends to beget inflationary consequences at others.

The problem has been approached by the courts so far considering it as though it presented a conflict of interest between the states and the national government. The conflict, we think, is apparent only. This is not a sectional matter. Wartime inflation is no respecter of state boundaries; it invades every home and rifles every pocketbook. The interest of the people of Washington, no less than that of the nation as a whole, is strongly engaged in the fight against this insidious enemy.[6] Nor does any invasion of state rights emerge, even technically. The war power has been committed by the states to the national government. The latter would be remiss in the exercise of this delegated power if, out of tenderness for the supposed sensibilities of the states, it failed in dire emergency to employ all suitable means for waging war effectively.

There does arise, of course, during the continuance of the emergency, a conflict between state and federal law. But this conflict is resolved by the supremacy clause of the Federal Constitution. Const. art. 6. The constitutionality of the emergency price control legislation has been set at rest in Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834, and Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892.

■ Both below and here the Commissioner has questioned the jurisdiction of the court on the grounds, (1) that the action is against the State, and by § 233 of the Judicial Code, 28 U.S.C.A. § 341, exclusive jurisdiction thereof is vested in the Supreme Court; (2) that under § 266 of the Judicial Code, 28 U.S.C.A. § 380, the case is one for hearing by a three-judge court; and (3) the attorneys representing the Administrator are not authorized to institute suit on behalf of the United States.

We think the points are without merit. We have already said that the state is a person within the intendment of the Act. If it be assumed that the suit, although in form against the Commissioner, is in substance a suit against the state, nevertheless jurisdiction is by § 205 of the Act vested in the District Courts. Cf. United States v. California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567. As to the contention based on § 266 of the Judicial Code, it is enough to say that the restraining order is not here sought upon the ground of the unconstitutionality of the state statute, but upon the ground of the supremacy of the federal law. Cf. Farmers' Gin Company v. Hayes, .DC., 54 F.Supp. 43. In respect to the third contention, it is sufficient to note that § 201(a) of the Act provides in part that "attorneys appointed under this section may appear for and represent the Administrator in any case in any court." Consult also § 205(a) and (b).

Reversed.

---

[4] Consult, contra, Twin Falls County v. Hulbert, supra, note 3.

[4a] See § 203(c).

[5] See "Statement of considerations for Regulation No. 460" filed by the Administrator with the Division of the Federal Register, 7 F.R. 7871, 8 F.R. 4681.

[6] Notoriously, the common schools and higher institutions of learning are among the most grievous sufferers from wartime inflation. The prevention of hardship to these institutions is among the declared purposes of the Price Control Act. See § 1(a).