## BOWLES v. WHEELER.
### No. 10924.

Circuit Court of Appeals, Ninth Circuit.
Aug. 1, 1945.
Writ of Certiorari Denied Dec. 10, 1945.
See 66 S.Ct. 265.

Samuel Mermin, Special Appellate Attorney, Thomas I. Emerson, Deputy Administrator for Enforcement, Fleming James, Jr., Director, Litigation Division, David London, Chief Appellate Branch, George Moncharsh, Deputy Administrator for Enforcement, all of Washington, D. C., W. Dunlap Cannon, Jr., Regional Litigation Attorney, of San Francisco, Cal., and Franz E. Wagner, District Enforcement Attorney, of Portland, Ore., for appellant.

Sidney J. Graham and John F. Reilly, both of Portland, Ore., for appellee.

Daniel B. Trefethen, Tracy E. Griffin, Rummens & Griffin, DeWolfe Emory, and Falknor, Emory & Howe, all of Seattle, Wash., amici curiae.

Before DENMAN, HEALY, and BONE, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment dismissing an action instituted on February 3, 1944 to recover treble damages under Sec. 205(e) of the Emergency Price Control

Act of 1942, as amended, 50 U.S.C.A.Appendix, § 925(e), for alleged overcharging for log booming and rafting services.

Appellee is engaged in the business of booming and rafting logs on the Willamette River. Logs are brought to his boomsite where appellee unloads them onto the river and assembles them into log rafts taken away by others. He charges for this unloading and assembling service on the basis of a log scale agreed upon between the purchaser and seller of the logs or under a log scale of a Scaling Bureau. His contention throughout this case is that the "service" he performs is not a "commodity" coming under the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., and therefore not subject to price control.

The complaint alleges that appellee sold his said services at prices exceeding maximum prices permissible under the applicable price regulations. Regulations relied on and asserted as applying are the General Maximum Price Regulation, effective May 1, 1942; Maximum Price Regulation No. 165 and amendment No. 23 to the latter regulation, which amendment became effective June 23, 1943.[1] These regulations provide generally that the basis of charges was the highest price charged during the month of March, 1942, for the same or similar services. The overcharges are alleged to have been exacted between February 1, 1943 and October 1, 1943. After trial, the lower court dismissed the action.

Both here and below, appellee challenges without qualification the application of the Act and the regulations to his business operations. If by the clear and unmistakable language of the statute, they are excluded from the scope of price control legislation, his position is sound. But we cannot read such a Congressional purpose in the plain and simple provisions of the Act. Clearly, it was intended to accomplish its announced purpose. (Section 1(a) of the Act.) The price stabilization program made necessary by the exigent demands of total war was well nigh all-inclusive. It was frankly designed to

prevent the inflationary spiral so characteristic of war periods. That Congress had no illusions concerning such a danger is apparent. Cf. Senate Report No. 931, 77th Congress, 2d Session, p. 25. This contemplation of the pressing problem is emphasized in numerous impressive court pronouncements. We do not doubt that the business operations of appellee fall within the broad terms of the Act. (See Section 302 of Act for types of business excluded.)

With respect to the regulations issued pursuant to the broad powers granted the Price Administrator to issue "such regulations and orders as he may deem necessary or proper in order to carry out the purposes and provisions of the Act" (section 201(d) we find conclusive evidence of the clear intent of Congress to make anti-inflation controls as effective as legislative ingenuity could devise. We are specifically forbidden by the Act to "consider" the validity and legality of the regulations (section 204(d). Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; Rosensweig v. United States, 9 Cir., 144 F.2d 30; Bowles v. Nu Way Laundry, 10 Cir., 144 F.2d 741, 746, certiorari denied 323 U.S. 791, 65 S.Ct. 431. It is, of course, the province and the duty of the court to determine for itself whether a defendant is within the coverage of the Act or regulation, but in the determination of that question it is not competent for the court to consider the fairness or the equity of any regulation or price schedule established thereby. Such consideration is reserved for the Emergency Court. Bowles v. Nu Way Laundry, supra.

As noted, the Act itself does not, eo nomine, exclude the services here considered. From the record it appears that the Administrator construes the regulations to cover such services and the regulations at no time excluded them by name. The construction given the regulations even prior to the adoption of an amendment (No. 23) to the Maximum Price Regulation 165, would bring booming and rafting ser-

---

[1] In the General Maximum Price Regulation (7 F.R. 3153), see especially sections 1499.1(a); 1499.2(a), (b), and explanations "Highest Price Charged During March 1942," and "Similar Services"; 1499.10; 1499.20(k), (t); 1499.21. In the Maximum Price Regulation No. 165, as amended (7 F.R. 6428, 8 F.R. 8506), see especially sections 1499.101(a), (c) (165); 1499.102(a) (1), (2), and explanations "Highest Price Charged During March 1942," and "Similar Services"; 1499.107; 1499.116(a) (10) (17).

vices within the orbit of price control. Since the Act itself is void of language definitely excluding such services from the scope of the Act, we therefore hold such services to be within its terms. See Bowles v. American Brewery, 4 Cir., 146 F.2d 842, 845.

■ It would appear that the Administrator in the exercise of the undoubted power to promulgate regulations, elected later to remove any possible doubt concerning the coverage and applicability of the general regulations by specifically naming booming and rafting in the amendment (No. 23). His interpretation of the Act and the applicability of the regulations issued under authority of the Act are entitled to great weight and serious consideration.[2] Also where the regulations purport to apply, the issue of applicability of the Act is a question for the Emergency Court only. See United States v. Pepper Bros., 3 Cir., 142 F.2d 340, 343; Bowles v. Cullen, 2 Cir., 148 F.2d 621; Bowles v. American Brewery, supra; Bowles v. Texas Liquor Board, 5 Cir., 148 F.2d 265.

■ To sustain the district court's judgment, appellee maintains that the Act does not apply to log booms, but this argument, if sustained, would require us to determine whether the Act empowers the regulations to which we have referred. Only the Emergency Court may consider such questions. Nor may we question the validity of a regulation by the process of construing the statute. Bowles v. Case, 9 Cir., 149 F.2d 777.

■ Appellee questions the authority of the Price Administrator to delegate the function of instituting treble-damage actions. Sec. 205(e) of Emergency Price Control Act. The Act (Sec. 201(a) authorizes the appointment of employees "to carry out [the] *functions and duties*" of the Administrator. Other provisions of this Section empower his authorized representatives to exercise any or all of his powers in any place, and the Administrator is authorized to issue such regulations and orders as he deems necessary to carry out the purposes and provisions of the Act.

This language is sufficient to give the Administrator power to delegate the suit-bringing function to any "authorized representative".

The legislative history of the price control bill gives persuasive weight to this view. The Senate Committee on Banking and Currency in reporting out the Price Control Bill (1942), described Section 201(a) and (b) as follows (Sen.Rept. No. 931, 77th Cong. 2nd Session pp. 20, 21):

"Section 201(a) authorizes the Administrator to hire such employees, utilize and to establish such regional, local, or other agencies, and to accept such voluntary and uncompensated services as he deems to be necessary. He may perform his duties through such employees or agencies *by delegating to them any of the powers given to him by the bill.* * * *

"Section 201(b) provides that the principal office of the Administrator shall be in the District of Columbia but authorizes the Administrator, or any representative or other agency *to whom he may delegate any or all of his powers, to exercise such powers in any place.* * * *" [Emphasis supplied.]

In the 1944 House Hearings on the proposed extension of the 1942 Act, the Deputy Administrator for Enforcement, OPA, frankly told the Committee having charge of the bill that the national office did not institute litigation, "that is done in the field offices * * * each district office has authority * * * to institute litigation * * * we cannot review all of the activities which go on in the field. As a matter of morale, if we have given them the job to do, we cannot substitute our judgment for theirs." With this frank and illuminating explanation and interpretation of departmental procedure before it, Congress extended the life of the Act. When re-enactment of the statute occurs, legislative ratification of the administrative interpretation may well be inferred. See Green Valley Creamery v. United States, 1 Cir., 108 F.2d 342; Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457; McCaughn v. Hershey Chocolate Co., 283

---

[2] See Consolidated Water Power & Paper Co. v. Bowles, Em.App., 146 F.2d 492; Bowles v. Nu Way Laundry, supra; Goodman v. Bowles, Em.App., 138 F.2d 917; Walling v. Cohen, 3 Cir., 140 F.2d 453; Norwegian Nitrogen Co. v. United States, 288 U.S. 294, 325, 53 S.

Ct. 350, 77 L.Ed. 796; Federal Communications Comm. v. Pottsville Broadcasting Co., 309 U.S. 134, 143, note 6, 60 S.Ct. 437, 441, 84 L.Ed. 656; American Tel. & Tel. Co. v. United States, 299 U.S. 232, 242, 57 S.Ct. 170, 81 L.Ed. 142.

U.S. 488, 51 S.Ct. 510, 75 L.Ed. 1183. If Congress was averse to this type of enforcement operations, it could have amended the enforcement provisions but it did not. Courts are not barred from the use of such legislative history which are pertinent aids to statutory construction and legislative intent. See United States v. Dickerson, 310 U.S. 554, 562, 60 S.Ct. 1034, 84 L.Ed. 1356; United States v. American Trucking Ass'n, 310 U.S. 534, 539, 549, 60 S.Ct. 1059, 84 L.Ed. 1345. Administrative construction of an act is always entitled to weight and serious consideration. See United States v. American Trucking Ass'n, supra; White v. Winchester Country Club, 315 U.S. 32, 41, 62 S.Ct. 425, 86 L.Ed. 619.

■ General Order No. 3 of the OPA, as amended October 6, 1942 (7 F.R. 7910) empowered Regional Enforcement Attorneys, among other high OPA officials, to authorize *any OPA attorney* to institute *any designated* civil action. On June 4, 1943, pursuant to a new policy of decentralization the restriction as to "designated" cases was removed by the Regional Enforcement Attorney at San Francisco by telegram to the Chief Enforcement Attorney at Portland, Oregon (who instituted this suit). On June 10, 1943, Revised General Order No. 3 was issued (8 F.R. 8027) which empowered Regional Enforcement Attorneys to authorize any attorney employed by OPA to institute civil actions in the name of the Price Administrator. The Portland attorney for appellant was an employee of the OPA. The Regional Litigation Attorney from San Francisco participated in the final argument below. We consider both of these official employees to be "authorized representatives", and the delegation to be adequate.

We do not view the holding in Cudahy Packing Co. v. Holland, 315 U.S. 357, 62 S.Ct. 651, 86 L.Ed. 895, as militating against the contention of appellant that under the statute the Price Administrator could and did delegate the suit-bringing function.

Under the Price Control Act every administrative function is referred to as a function of the Administrator. These functions are delegable and under Section 201(a) of the Price Control Act the Administrator may appoint "such employees as he deems necessary *in order to carry out his functions and duties under this Act.*" The Act authorizes the appointed attorneys (Section 201) to appear for and represent the Administrator *in any case in any court.* Language conferring broader powers of representation would be hard to formulate. The attorneys for the Administrator in this case were duly authorized to institute the litigation. In this connection, it may be noted that authority to delegate powers has also been implied from statutory rule making powers (see Section 201(d) of the Price Control Act). Plapao Laboratories v. Farley, 67 App.D.C. 304, 92 F.2d 228, 229; Lewis Pub. Co. v. Wyman, C.C., 152 F. 787; United States v. Bareno, D.C., 50 F.Supp. 520.

The legislative history in the Cudahy Packing Co. case demonstrated a Congressional intent *not* to delegate the subpoena power; the legislative history in the present case affirmatively shows that the power to delegate the suit-bringing function *was intended.* Moreover, the suit-bringing function may well not be as oppressive as the power to issue a subpoena which is not returnable before a judicial officer. Courts have upheld the delegation of functions at least as suggestively oppressive as the one in the case at bar. Compare Shreveport Engraving Co. v. United States, 5 Cir., 143 F.2d 222; La Porte v. Bitker, 7 Cir., 145 F.2d 445; Lew Shee v. Nagle, 9 Cir., 22 F.2d 107; Lloyd Royal Belge Societe Anonyme v. Elting, 2 Cir., 61 F.2d 745.

■ Independently of such administrative delegation under the statute, there was promulgated a general order, dated September 7, 1944, (Second Revised General Order No. 3, 9 F.R. 11137) which effectively ratified the bringing of the suit.[3]

---

[3] The Order provides in its second paragraph:

"The Price Administrator does hereby ratify, approve and confirm all acts done and all proceedings had or taken by an attorney-at-law regularly admitted to practice in any state, territory, or district, purporting to act in the name of or on behalf of the Price Administrator in any suit, action or proceeding heretofore at any time brought or purporting to be brought by the Price Administrator in any court of the United States or of any state, territory, or district, said ratification, approval and confirmation to have the same force and effect as if specific authority to institute and conduct such suit, action or proceeding had been expressly granted by the Price Administrator to such attorney immediately prior to the commencement of such suit.

Delegation of the suit-bringing function has been upheld by several district courts. Bowles v. James Henry Packing Co., D.C. W.D.Wash., 62 F.Supp. 306, before Leavy, J.; Bowles v. Krause Milling Co., D.C.E.D. Wis., 62 F.Supp. 244; Bowles v. Slater, D.C.E.D.Mich., 1945, 64 F.Supp. 387. If ratification be deemed necessary to sustain the action, it appears here.

Furthermore it appears settled law that "the unauthorized bringing of an action may * * * be ratified by the person in whose name and on whose account it was brought so as to sustain the action from the beginning". Mechem on Agency § 529 (1914). See Robb v. Vos, 155 U.S. 13, 39, 15 S.Ct. 4, 39 L.Ed. 52; Rodgers v. Bromberg, 5 Cir., 53 F.2d 723, 724, certiorari denied 285 U.S. 542, 52 S.Ct. 314, 76 L.Ed. 934; Couch et al. v. Central Bank and Trust Corp., 5 Cir., 297 F. 216; Massachusetts Construction Co. v. Kidd, C.C.Mass., 142 F. 285. With authority in the Administrator to delegate the suit-bringing function, the use of such power must be determined, not when suit was brought, but when judgment is rendered.

Giving the fullest weight to appellee's argument on delegation, it does not follow that appellee has a vested right in a mistake of administrative officials. See Wright & Taylor v. Lucas, 6 Cir., 45 F.2d 75, 78; Swayne & Hoyt v. United States, 300 U.S. 297, 301, 302, 57 S.Ct. 478, 81 L.Ed. 659; Graham v. Goodcell, 282 U.S. 409, 429, 51 S.Ct. 186, 75 L.Ed. 415; Charlotte Harbor Ry. v. Welles, 260 U.S. 8, 43 S.Ct.

3, 67 L.Ed. 100; United States v. Heinszen, 206 U.S. 370, 27 S.Ct. 742, 51 L.Ed. 1098, 11 Ann.Cas. 688. Although some of these cases involve legislative ratification, we think them applicable here where the suit-bringing function is clearly delegable under the statute. Being delegable, ratification may follow institution of an action by counsel to. whom such authority could be delegated under the statute. This is particularly true where the defect in administration could be corrected without violating any substantial equity. The Supreme Court has also held that such ratification is valid though it occurs after judgment by the lower court and pending appeal. Rafferty v. Smith Bell Co., 257 U.S. 226, 42 S.Ct. 71, 66 L.Ed. 208.

It is objected that the ratification here is too general; that it is necessary for the Administrator to consider each case before he may ratify it. But such a rule of law is for the benefit and protection of the principal and not for third parties to claim. Compare also United States v. Hall, 9 Cir., 145 F.2d 781, as to delegations broad in their language.

Applying the regulations to the facts disclosed by the record, we are convinced that appellee's customers, as of March, 1942, and subsequent thereto, were not purchasers of the same class, but were set in different price classes according to economic conditions and appellee's own need for business at the time they became his customers. His own testimony shows this.[4]

The Administrator's interpretation

---

action or proceeding. Without in any manner limiting the generality of the foregoing, the Price Administrator does hereby ratify, approve and confirm all acts done and all proceedings had or taken by any such attorney in instituting, maintaining and prosecuting any and all suits, actions, and proceedings of whatsoever nature heretofore at any time brought or purporting to be brought in the name of the Price Administrator under the provisions of * * * Section 205(e) of said [Emergency Price Control] Act as originally enacted, or, as amended, to enforce any liability created by said section."

4 "A. (by Mr. Wheeler) * * * We had a difference in rates. It has been a historical difference. It had existed for some period of time. * * * You want to know why there was a difference in rates? * * * As of, say, January 1st, 1942?

"Q. Yes. A. Well, that came about by different circumstances. For instance, the Standard Logging Company came to us right at the absolute bottom of the depression. * * * In order to get the total volume of business up we gave them a very good price and the—it—it is of record— whenever a man got a price it didn't change him out of that class. Later we needed some business from the Mist Logging Company and we gave them a price comparable to the Standard. At that time we needed some more business. And when, for instance, when Mill City came along that boom didn't need any more business and we gave them a price that fit the condition. So that was our price structure. It sounds rather ridiculous but we have never lost a customer. We kept them satisfied. That is the proof of the thing. The competitive conditions prevailing at the time that we made the deal governed

of the Maximum Price Regulation No. 165 as to "purchasers of the same class" was upheld in Bowles v. Nu Way Laundry, supra. The court found that under applicable regulations (General Maximum Price Regulations, Section 20(k), applicable from February 1, 1943 to June 23, 1943) and Maximum Price Regulation 165 (applicable June 23, 1943 to September 30, 1943) all of appellee's customers during March, 1942, and during February 1, 1943–September 30, 1943, were purchasers of the same class, and therefore, since the price range for appellee's customers as of March, 1942, was 60¢ to 80¢, any change of rates by appellee within the limits of these figures would not violate the regulations.[5] Section 20(k) of the General Maximum Price Regulation defines "purchaser of the same class" by reference to "the practice adopted by the seller in setting forth prices for commodities or services for sales to different purchasers or kinds of purchasers." A similar definition occurs in Maximum Price Regulation 165.

Both of the above regulations were clearly interpreted by the Administrator as to the meaning of the phrase "purchasers of the same class." See for G.M.P.R., Pike and Fischer, O.P.A. Service, pp. 11:968,9; for M.P.R. 165, "Manual No. 2 under Maximum Price Regulation 165—Services", p. 21, Pike and Fischer, O.P.A. Service, p. 15:819. Illustrative of the Administrator's interpretation is this sentence taken from the "manual": "Whether one class of customer is or is not the same as another class depends principally on your own business practice. If you customarily recognized one class as differing from another by charging different prices, you will be required to continue treating them as different classes." The regulations seem clear, but if ambiguous, the Administrator's interpretation, as indicated above, is entitled to great weight. Compare Consolidated Water Power & Paper Co. v. Bowles, Em.App.1944, 146 F.2d 492; Bowles v. Seminole Rock & Sand Co., 65 S.Ct. 1215; Bowles v. Nu Way Laundry, supra.

Appellant next objects to the district court's conclusion that the fact that a rate increase was allowed to Scott Rafting Co. justifies defendant's rate increase and demonstrates that defendant's increases did not affect the cost of living and were consistent with Executive Order 9328, 50 U.S.C.A.Appendix, § 901 note. What the Administrator did in the case of Scott would not seem pertinent here. See Brown v. Mars, 8 Cir., 135 F.2d 843. In any case, we are here solely concerned with the question of whether the defendant violated the regulations.

There appears to be no power under the Act for the district court to adjust defendant's rates. Denials by the Administrator of rate adjustments are subject to protest, and such denials are made reviewable by the Act only in the Emergency Court which is the exclusive tribunal for review of allegedly discriminatory or invalid administrative action. Yakus v. United States, supra; Bowles v. Willingham, supra; see also Capitol Foundry Co. v. Bowles, Em.App.1944, 146 F.2d 855; Bowles v. Seminole Rock & Sand Co., supra. (It appears from the record that defendant is now seeking adjustment of its rates with the National Office.) Nor would it be a defense to defendant that other alleged violators were not subject to enforcement suits. See Moskovitz v. City of St. Paul, 318 Minn. 543, 16 N.W.2d 745.

Appellee maintains that plaintiff's complaint is insufficient for uncertainty and failure to negative exceptions in the Act. This court has said: "Indefiniteness of the complaint is not a ground for dismissal. If a defendant needs additional information to enable him to answer or prepare for trial the procedure provided by the Federal Rules is a motion for a more definite statement or for a bill of particulars [Rule 12(e)]." Bowles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566, 568 certiorari denied 65 S.Ct. 1554. Nor was appellant "required to anticipate or negative a defense," which may have been set out as an exception or proviso in the Act. McKelvey v. United States, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301; Evans v. United States, 153 U.S. 584, 14 S.Ct. 934, 38 L.Ed. 830; United States v. Pepper Bros., supra.

Appellant objects to the court finding as a fact that the defendant's increases during February 1, 1943–September

---

the price, and whenever I wanted more revenue I increased them all horizontally."

[5] In its motion to amend the pre-trial order appellant maintains these figures should be from 60¢ to 75¢. We hold this contention correct in our order directing amendment of pre-trial order, infra p. 42.

30, 1943 were made in good faith and in the reasonable belief that the Act and regulations did not apply, and were not the result of wilfulness or failure to take practicable precautions; and in failing to hold that even if these facts were true they would not constitute a *complete* defense to the action. Under section 205(e) as amended by § 108(b) of Stabilization Extension Act of 1944, Public Law 383, 78th Congress, 2d Session, "if the defendant proves that the violation * * * was neither wilful nor the result of failure to take practicable precautions against the occurrence of [violations]," the court may mitigate the treble damages provided for in the Act for violations. In Bowles v. Glick Bros. Lumber Co., supra, this court said: "such partial defenses as are afforded by the amendments must be pleaded and proved by the defendants." It appears that although the amendment to the Price Control Act relating to the mitigation of damages became effective June 30, 1944 nevertheless the amendment applies to this case. See Section 108(c) of the Stabilization Extension Act of 1944, see 50 U.S.C.A. War Appendix, Section 925, Historical Note. The facts disclosed, and the testimony of appellee, did not meet these defense requirements in a treble damage suit. There was a failure of proof on the part of appellee in this particular and the finding of the court thereon is without support in the evidence.

■■■■ Counsel for appellant, in their brief, urge us to send the case back in order that appellee may be required "to plead and prove the taking of practicable precautions and freedom from wilfulness." In light of the unsupported finding of the court on this issue, we see no valid reason for rejecting this request since in any event the case must be remanded to permit amendment of the pre-trial order and the issue of wilfulness and the taking of practicable precautions may well be settled by further proceedings in the case at that time. We think the trial court erred in denying appellant's motion to amend the pre-trial order in the respects mentioned in the motion.[6] Certain material statements in the pre-trial order are clearly erroneous as appear from facts disclosed at the trial. The order should, and properly so, be made to conform to the facts, some of which appear in the transcriptions made from records of appellee, both parties at pre-trial agreeing that they correctly recited the facts as to dates and charges. Other portions of the pre-trial order should be amended to conform to appellant's motion, which is sustained by the record. Since the pre-trial order was not settled until after the trial, we cannot agree with appellee that he will be prejudiced by these changes which only amend the order to conform to the evidence and regulations before the court. We are of the view, and so hold, that on the issue of damages, appellant must prevail in this action. However, the further issue of whether treble damages should be recovered presents a question of fact which may only be determined by the trial court on the submission of additional proof on that issue, conformable to the requirements of the statute.

The judgment of the lower court is reversed and the cause remanded with directions to amend the pre-trial order in conformity to the views herein expressed, and to permit amendment of appellee's amended answer to present the issue of wilfulness and failure to take practicable precautions against occurrence of the violations charged in appellant's complaint. Appellee is entitled to present other and further evidence and testimony on this issue to supplement the record.

---

[6] Trial was had on May 22–23. Pretrial occurred immediately before the trial. The pre-trial order was entered July 21. Final judgment of dismissal was entered August 7. Motion to amend the pre-trial order was denied the day judgment of dismissal was entered.