## CITY OF DALLAS v. BOWLES, Price Administrator.

### No. 259.

United States Emergency Court of Appeals.

Heard at Dallas, Tex., Nov. 28, 1945.

Decided Dec. 20, 1945.

A. J. Thuss, Acting City Atty., of Dallas, Tex., for complainant.

Ardine A. White, Regional Enforcement Executive, of Dallas, Tex. (Richard H. Field, Gen. Counsel, Jacob D. Hyman, Associate Gen. Counsel, Warren L. Sharfman, Chief, Court Review Rent Branch, and Harry H. Schneider and Eli A. Glasser, Attys., all of Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MAGRUDER, Judge.

We have to decide here whether housing accommodations owned by a municipal corporation are subject to rent control under the Emergency Price Control Act.

The Price Administrator imposed rent control in the Dallas Defense-Rental Area by regulation effective November 1, 1942. 8 F.R. 7322, 7333. Early in 1943, the City of Dallas and the State of Texas entered into an agreement for the joint construction of an arterial highway through the city, under which agreement the city undertook to acquire an unobstructed right of way of suitable width through a residential section. Pursuant thereto, the city purchased a number of parcels of real estate with dwelling houses thereon. The construction project was held in abeyance due to war-time conditions. Meanwhile, and as a temporary expedient, the city rented to tenants some 116 dwelling houses so acquired.

One of the houses purchased by the city had been owned and occupied by V. P. Phillips and wife. By deed executed January 27, 1945, they sold this property to the city for $5400. Contemporaneously, the city contracted to rent the property back to Mr. and Mrs. Phillips on a month-to-month tenancy at $54 per month. The freeze date in the regulation as applied to this rental area was March 1, 1942. Since

on that date, and continuously up to the date of purchase by the city, the house was owner-occupied, the first rent charged by the city under its rental agreement with Mr. and Mrs. Phillips—namely, $54—became the maximum rent pursuant to § 4(e) of the regulation, subject, however, to the authority of the Area Rent Director at any time, on his own initiative or on application by the tenant, to order a decrease of the maximum rent under § 5(c) (1) on the ground that the "first rent" was higher than the rent generally prevailing in the area for comparable accommodations on the freeze date.

Acting pursuant to § 5(c) (1), the Rent Director on April 21, 1945, after due notice to the City of Dallas as landlord, entered an order decreasing the maximum rent of the dwelling rented to Mr. and Mrs. Phillips from $54 to $35 per month. It is not disputed that $35 was the rent generally prevailing for comparable accommodations on the freeze date, and that the order of the Director was therefore appropriate, apart from complainant's contention as a matter of law that municipally owned dwelling houses are not subject to rent control.

On May 14, 1945, the City of Dallas filed with the Administrator a protest directed against the Rent Director's order of April 21, 1945, and also against those provisions of the rent regulation under which the Rent Director acted, in so far as they applied to municipally-owned housing. The Administrator denied the protest by order issued August 9, 1945, and the City of Dallas thereupon filed its complaint in this court.

The case is presented to us on the broad basis of two contentions by complainant: (1) that the Act, properly construed, does not authorize the Administrator to subject to rent control housing accommodations owned and operated by a state or political subdivision thereof, and (2) that if the Act is construed otherwise, it must be held to be unconstitutional.

On the point of statutory construction, we think complainant's argument is plainly untenable. In this connection we follow the holding in Bowles v. Case, 9 Cir., 1945, 149 F.2d 777, and reject that in Twin Falls County v. Hulbert, Idaho 1945, 156 P.2d 319, certiorari granted 66 S.Ct. 96.

In defining the commodities to be subject to price control, § 302(c), 50 U.S.C.A. Appendix § 942(c), of the Act makes certain specific exemptions. Section 302 (f) broadly defines the term "housing accommodations" as meaning "any building * * * rented or offered for rent for living or dwelling purposes * * *", without any exception relating to ownership. Section 4(a), 50 U.S.C.A.Appendix § 904(a), provides that, "It shall be unlawful * * * for any person to sell or deliver any commodity * * * or to demand or receive any rent for any defense-area housing accommodations * * * in violation of any regulation or order under section 2 * * *." The term "person" is defined in language that hardly could be more inclusive. Section 302(h) provides:

"The term 'person' includes an individual, corporation, partnership, association, or any other organized group of persons, or legal successor or representative of any of the foregoing, and includes the United States or any agency thereof, or any other government, or any of its political subdivisions, or any agency of any of the foregoing: Provided, That no punishment provided by this Act shall apply to the United States, or to any such government, political subdivision, or agency."

 There is nothing in the legislative history, nor is there anything in the broad declaration of policy in § 1(a), 50 U.S.C.A.Appendix § 901(a), to suggest that states or political subdivisions thereof were intended to be exempted from price or rent regulations when engaged in selling commodities otherwise subject to regulation or in renting "housing accommodations" as defined in the Act. Certainly, the adverse effect on the economy of inflationary, unregulated prices or rents might be just as serious, whether the seller or landlord be a state or municipal corporation or a private person. See Bowles v. Case, supra. Furthermore, the City of Dallas would have no standing to file a protest with the Administrator under § 203(a) of the Act, 50 U.S.C.A.Appendix § 923(a), and no standing to file a complaint in this court under § 204(a), 50 U.S.C.A. Appendix § 924(a), upon denial of such protest, if it were not a "person" within the meaning of the Act.

Complainant insists that there is a "time-honored" and inflexible canon of statutory construction to the effect that states and political subdivisions thereof are deemed not to be included within the scope of federal legislation unless specifically re-

466

ferred to. It is not enough, says complainant, that the Act after including the United States or any agency thereof by specific reference, goes on to include "any other government, or any of its political subdivisions"; the reference would have to be to "state" governments. No such rigid canon of construction is recognized in the cases. Indeed, it has many times been rejected. State of Ohio v. Helvering, 1934, 292 U.S. 360, 370, 54 S.Ct. 725, 78 L.Ed. 1307; United States v. California, 1936, 297 U.S. 175, 186, 56 S.Ct. 421, 80 L.Ed. 567; State of California v. United States, 1944, 320 U.S. 577, 585, 64 S.Ct. 352, 88 L. Ed. 322.

In United States v. California, supra, the obligations imposed by the Federal Safety Appliance Act, 45 U.S.C.A. § 2, upon "any common carrier engaged in interstate commerce" were held applicable to a state-owned and operated terminal railroad running along the San Francisco waterfront and engaged in interstate commerce. The court said (297 U.S. at page 186, 56 S.Ct. at page 425, 80 L.Ed. 567):

"Respondent invokes the canon of construction that a sovereign is presumptively not intended to be bound by its own statute unless named in it * * *. This rule had its historical basis in the English doctrine that the Crown is unaffected by acts of Parliament not specifically directed against it. * * * The presumption is an aid to consistent construction of statutes of the enacting sovereign when their purpose is in doubt, but it does not require that the aim of a statute fairly to be inferred be disregarded because not explicitly stated. * * * We can perceive no reason for extending it so as to exempt a business carried on by a state from the otherwise applicable provisions of an act of Congress, all-embracing in scope and national in its purpose, which is as capable of being obstructed by state as by individual action. Language and objectives so plain are not to be thwarted by resort to a rule of construction whose purpose is but to resolve doubts, and whose application in the circumstances would be highly artificial."

We do not perceive the relevance of Davies Warehouse Co. v. Bowles, 1944, 321 U.S. 144, 64 S.Ct. 474, 479, 88 L.Ed. 635, upon which complainant lays much stress in its argument on the point of statutory construction. That case involved a specific exemption in the Act relating to "rates charged by any common carrier or other public utility"; and the court decided that the term "public utility"—undefined in the Act—applied to a public warehouse in California, the business of which is declared by the state constitution to be that of a public utility and which is subject to rate regulation under the Public Utilities Act of the state. This interpretation was adopted despite the fact that warehousing is not a business generally and traditionally regarded as a public utility and subjected to rate regulation by state regulatory bodies. The Supreme Court referred to legislative history as indicating that Congress deemed the danger of inflation to exist "only in a minor degree, if at all, from public utilities already under state price control". In the absence of clearer expression by Congress, the court thought that Congress did not intend to supersede the power of the California regulatory commission exercising control over warehouse rates; nor did it think that considerations of nation-wide uniformity in the application of the Emergency Price Control Act to warehousing charges were so compelling as to indicate a contrary conclusion. It is one thing to rely upon state regulatory bodies to resist inflation of public utility rates. It is quite another thing to rely upon the self-restraint of states or municipalities when, in a time of wartime scarcities, they are engaged in the business of selling commodities or renting housing accommodations. As we have already seen, the Act expressly confers upon the Price Administrator power to regulate prices or rents charged by the United States or any of its agencies. It is fanciful to suppose that, when § 302(h) goes on to include "any other government, or any of its political subdivisions", Congress was referring only to foreign governments, and not to state governments also.

Coming then to the constitutional point, we must reject complainant's proposition that Congress is without power to subject state- or municipally-owned and operated housing to rent control. Bowles v. Case, supra. In support of this argument, complainant refers to the Tenth Amendment, which provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Citation of the Tenth Amendment does not advance the

argument much. "The amendment states but a truism that all is retained which has not been surrendered." United States v. Darby, 1941, 312 U.S. 100, 124, 657, 61 S. Ct. 451, 462, 85 L.Ed. 609, 132 A.L.R. 1430. "The Tenth Amendment does not operate as a limitation upon the powers, express or implied, delegated to the national government." Fernandez v. Wiener, 66 S. Ct. 178, 189. See also United States v. Appalachian Electric Power Co., 1940, 311 U.S. 377, 428, 61 S.Ct. 291, 85 L.Ed. 243.

It is settled that, under its plenary war powers, Congress may constitutionally protect the national economy from disastrous inflation by imposing price and rent controls. Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 1944, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892. Such controls are, or may reasonably be deemed by Congress to be, a vital necessity without regard to the identity of the sellers or landlords. If a state or municipality chooses to engage in selling commodities or renting dwelling houses, it must do so in subordination to the war power of Congress to control prices and rents just as the State of California, in United States v. California, 1936, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567, by engaging in interstate commerce by rail, subjected itself to the plenary power of Congress over interstate commerce. See also State of California v. United States, 1944, 320 U.S. 577, 64 S.Ct. 352, 88 L.Ed. 322.

Complainant invokes the analogy of the implied constitutional immunity of state instrumentalities from the federal taxing power. In this case we do not have to go so far as to hold that the war powers of Congress are subject to no analogous implied qualifications in favor of the states. Cf. United States v. California, supra, 297 U.S. at pages 184, 185, 56 S.Ct. at pages 424, 425, 80 L.Ed. 567. It is enough to say that, if any such state immunities are to be implied, they could not in reason be more extensive than the recognized state immunity from federal taxation. Such tax immunity has been implied from the nature of our federated constitutional system, in order to assure to the states the full exercise of their essential governmental functions in their appropriate sphere. However, when a state engages in the sale of commodities, it is subject to federal excise taxes. State of Ohio v. Helvering, 1934, 292 U.S. 360, 54 S.Ct. 725, 78 L.Ed. 1307.

In the case at bar, the City of Dallas acquired the dwelling houses in question in the exercise of its governmental function of constructing highways. But it is obvious that the federal government is not in any substantial way interfering with the city's discharge of that governmental function, when it subjects the city-owned dwellings to a generally applicable rent regulation during such time as the city chooses to put the dwellings on the rental market. It is immaterial that the renting was in a sense incidental to the performance of an orthodox "governmental" activity. Bowles v. Texas Liquor Control Board, 5 Cir., 1945, 148 F.2d 265.

A judgment will be entered dismissing the complaint.