BOWLES, Adm'r, OPA, v. LEVY, and four other cases.

Nos. 2786, 2785, 2787, 2788, 2824.

District Court, D. Oregon.
Feb. 20, 1946.

Supplemental Opinion June 10, 1946.

Wm. B. Wetherall, Regional Chief, Food Enforcement Division, of San Francisco, Cal., and F. E. Wagner and James M. Blackford, Dist. Enforcement Attys., Cecelia P. Gallagher, Enforcement Atty., and Victor E. Harr and J. Robert Patterson, Asst. U. S. Attys., all of Portland, Or., for the plaintiff.

Cake, Jaureguy & Tooze, of Portland, Or. (Herbert C. Hardy and Ralph H. Cake, both of Portland, Or., of counsel), for defendants.

McCOLLOCH, District Judge.

I accept the contention of defendants as proven that the regulation is unworkable in this area. It has been shown that violations are unavoidable. No evidence was offered to the contrary.

But the question remains whether I may deny OPA an injunction in any case where a regulation exists and violation of the regulation is shown. All of my instincts say that should not be enough, that the equities should be open to inquiry in every case.[2]

Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754, ruled that an injunction need not be issued where a defendant was honestly endeavoring to comply and could in time comply. But here the defendants, while honestly endeavoring to comply, cannot at all times and under all conditions be certain that their operations will, at the end of every thirty day reporting period, "be in compliance" under the formula.

The regulation itself cannot be assailed in this proceeding. Sec. 204(d) of the Price Control Act, 50 U.S.C.A.Appendix,

[2] It seems not generally understood among Agency attorneys that when the Government enters the courts as a litigant, its standing, with few exceptions, not pertinent here, is the same as a private litigant. 28 Am.Jur. p 342.

§ 924(d), prohibits that. It compels the courts to treat a regulation as valid, even though they know it to be invalid.

Assuming, therefore, as Congress has commanded, that the regulation is valid, must an equity court issue an injunction, even though it is clear that future violations are bound to occur, regardless of the good faith and earnest efforts of the defendants to avoid violations?

In other times, I would have thought there could be but one answer to this question, but the decisions in this Circuit have so completely shorn the District Judges of discretion in OPA cases, I must conclude that equity is compelled to act in this field, even though there be not equity—that an injunction must issue, even though it is known at the time of issuance that non-willful violations are bound to occur.[3]

This is a strange situation, previously unknown to our law, and it could not arise except for the vise [4] that Sec. 204 (d) puts on the courts, coupled with the Appellate decisions referred to, which take away the discretionary powers normally allowable to trial courts.

Because I have no choice, I will therefore issue the requested injunctions, expressly reserving, however, the question of their enforceability, for I am yet to be persuaded that an equity court can punish conduct that contains no ingredient of evil.[5]

Supplemental Opinion.

The Sixth Circuit Court of Appeals has held that a regulation issued by the Stabilization Director but administered by the Office of Price Administration is subject to challenge in the Federal District and Circuit Courts. Blalack v. United States, 6 Cir., April 5, 1946, 154 F.2d 591.

This decision breaches the iron wall behind which the successive Price Administrators have ruled as administrative absolutists. Only a trifling number of the thousands of citizens who have been sued by OPA have been able to defend. By the terms of Sec. 204(d) they were denied the right to defend in the court where sued, and as I have previously pointed out in Bowles v. Richards, 63 F.Supp. 946, only a handful were able to finance a trip to Washington to appear before the Emergency Court of Appeals. The joker in 204 (d) is that it prohibits defenses to "orders" as well as "regulations". "Orders", with few exceptions, affect individuals. No one knows how many orders have been issued, which had to be obeyed, because the Price Control Act abolished all defenses to them.

I intend to follow the Sixth Circuit decision, and to assert and exercise jurisdiction to pass on the validity of M.P.R. 574, the Regulation here involved. There is no distinction that I am able to detect between the Sixth Circuit case and the present one. In the Sixth Circuit case the Stabilization Director had issued a regulation which prohibited the handling of ungraded veal. By directive, the Stabilization Director had appointed the Price Administrator to enforce the regulation. This, it was held, did not clothe the regulation with the immunity of 204(d), and challenge to its validity was allowed.

In the present case the Stabilization Director ordered the Price Administrator to issue a price regulation "implementing"

---

[3] It should be plain that the result of this pincer is to destroy the judicial character of the courts. It makes them mere vessels.

[4] Case v. Bowles, 66 S.Ct. 438, and Hulbert v. Twin Falls County, Idaho, 66 S.Ct. 444, will repay study. The vise may be loosening. See the same cases in the lower courts: Bowles v. Case, 9 Cir., 149 F.2d 777; Soundview Pulp Co. v. Taylor, 21 Wash.2d 261, 150 P.2d 839; Twin Falls County v. Hulbert, Idaho, 156 P.2d 319.

[5] See the remarks of the Chief Justice at the argument in Hecht Co. v. Bowles, 1944, 321 U.S. 321, 64 S.Ct. 587, 88 L. Ed. 754, reported in The United States Law Week for Feb. 8, 1944. 12 L.W. Sec. 3, p. 3257.

This is one of twenty or more cases that have been filed throughout the Western States to combat, it is said, the rising price of beef cattle. My recollection of a number of years in the range country is that prices of cattle always rise at this time of the year, before the new grass starts. Be that as it may, this has been selected as a test case, and I should think it would be an excellent case to take to the United States Supreme Court to find out whether the courts have become mere rubber stamps for executive action.

the complex arrangement by which subsidies had been paid (since June, 1943) to slaughterers, to accomplish the two-fold purpose (since October, 1943) of maintaining both floor and ceiling on live cattle prices.

In the main, the Price Administrator added nothing to the existing body of regulations and directives. What the Price Administrator said to the slaughterers was: "If from now on you fail to observe any of the requirements that have been prescribed in connection with the subsidy program, you will have to deal with me, and I will proceed against you under the statutory authority that I have been given, namely, by suits for injunctions, treble damage actions, and criminal prosecutions, and, as well, by suspension of licenses to operate as slaughterers." About the suspension of licenses I will speak later (Section 14).

Now here is what I pin my decision on, although I think a good deal more could be said: Since the slaughterers could have attacked the validity of any or all of the complex subsidy plan, as it might affect their business prejudicially, prior to the Price Administrator's implementation of it, they are none the less entitled to attack the plan, since the enforcement of it has been committed to the Price Administrator.

The Price Administrator added nothing original to the plan, and he certainly could take nothing away. The Stabilization Director and the other agencies involved could abandon the plan at any time, or change it, as they saw fit, entirely without consultation with the Price Administrator.

Sec. 204(d) cannot, in my opinion, and should not, be extended to cover this situation.

 Section 14 is new. It comes from the Second War Powers Act of 1942, 50 U.S.C.A.Appendix, § 631 et seq. It provides for rationing of the number of better grade animals that may be bought, and counsel did not attempt to claim the immunity of Sec. 204(d) for it. In my opinion, the Section cannot be separated from the rest of the regulation, nor can the rest of the regulation be separated from it.

This brings me to the decision of the case. Injunction is asked against further violation of the regulation. The undisputed testimony is that defendants cannot operate under the regulation and remain in business. Without adding to the general discussion that is inflaming the nation, I hold on the record here presented, that M.P.R. 574, as construed and sought to be enforced by the Price Administrator, is void and unenforceable.

The injunctions prayed for are, therefore, denied, and the suits will be dismissed.