**PORTER, Adm'r, OPA, v. CITY OF CHARLESTON, et al.**

**No. 610.**

District Court, S. D. West Virginia.

March 26, 1946.

area in the City of Charleston which has heretofore been condemned by the City for the purpose of constructing a community playground and other recreational facilities. It is alleged and not denied that the City is about to evict these tenants without having obtained from the Office of Price Administration a certificate for eviction, which plaintiff alleges is required by the rent regulation for housing issued under the provisions of the Emergency Price Control Act of 1942, as amended, 50 U.S. C.A.Appendix, § 901 et seq. 10 F.R. 11667. The particular provision of the regulation under which this injunction is sought is found in Section 6(b)(1), which reads as follows: "No tenant shall be removed or evicted * * * unless, on petition of the landlord, the Administrator certifies that the landlord may pursue his remedies in accordance with the requirements of the local law. The Administrator shall so certify if the landlord establishes that removals or evictions of the character proposed are not inconsistent with the purposes of the act or this regulation and would not be likely to result in the circumvention or evasion thereof. The certificate shall authorize the pursuit of local remedies at the expiration of six months after the date of filing of the petition unless the Area Rent Director has determined that a three months' period is adequate for the purposes of the act in the particular area in issuing certificates under Section 6(b)(2), in which event the applicable period shall be three months. Within the discretion of the Area Rent Director the certificate may authorize the pursuit of local remedies for the removal or eviction of the tenant at a time less than six or three months, as the case may be, after the date of the filing of the petition if the petitioner establishes that unusual hardship would otherwise result, or that a lesser period in the particular case is consistent with the purposes of the regulation and the act."

In February, 1945, pursuant to a bond election the voters of the City of Charleston authorized the issuance of bonds by the City for the acquisition and improvement of various parcels of ground as playgrounds and recreation centers. The property now under consideration is part of an area which was selected as a playground site to serve a neighborhood wherein it was thought that the concentration of population and other conditions were conducive to juvenile delinquency. Playground fa-

Walter M. Elswick, Dist. Enforcement Atty., OPA, of Hinton, W. Va., and J. Gardner Ashcraft and John H. Hatcher, Jr., Enforcement Attys., OPA, both of Charleston, W. Va., for plaintiff.

P. G. Meador and John N. Charnock, both of Charleston, W. Va., for defendants.

MOORE, District Judge.

The Administrator of the Office of Price Administration seeks an injunction against the City of Charleston and the Sheriff of Kanawha County, W. Va., to prevent eviction of tenants occupying houses within an

cilities are needed to correct these conditions.

The City acquired the property in the usual course by exercise of the power of eminent domain, and has now agreed with a contractor with reference to the construction of the project. The contractor is ready to begin work and the first step is removal or demolition of the houses. An order has been entered by the Circuit Court of Kanawha County vesting legal title and possession in the City, and a further order of the same court directed the Sheriff of Kanawha County to evict the persons living on the premises. The property involved is a small lot approximately 50 feet wide and 100 feet deep, which is crowded with small shacks and trailers which have heretofore housed some thirteen families, a part of whom have already vacated the premises.

On this application for injunction a simple question of law is presented, namely, is the City of Charleston, when exercising the power of eminent domain for the acquisition of private property for public use, required to observe the aforesaid rent regulation for housing by procuring a certificate of authorization from the area rent director before evicting tenants from the condemned area?

■ One of the prerequisites to the exercise of the power of eminent domain in West Virginia is that there must be a proper and reasonably immediate use on the part of the condemnor for the property to be acquired. The City of Charleston has no power to engage in the business of renting property, unless it be in rare cases where property originally acquired and used for governmental purposes becomes vacant, in which cases the City would doubtless have the right to rent it temporarily in order to avoid losses which would be brought about by leaving it vacant. The property now in question having been condemned for an immediate public use, and the City being ready to proceed with the construction of the project for which it was acquired, the relationship of landlord and tenant as between the City and the occupants of the property has not been created and does not exist. Therefore, the case of City of Dallas v. Bowles, Em.App., 152 F.2d 464, cited in plaintiff's brief, has no application to the facts of the instant case. There the municipality was acting in the capacity of landlord and was de-

manding and receiving rents. It seems clear that where such is the case the Emergency Price Control Act is applicable, since it expressly includes within its scope any government or a political subdivision thereof. The Supreme Court of the United States in a recent case reaffirmed the rule that when a state government engages in business of a proprietary nature (in that case the sale of water from a mineral spring) it becomes subject to Federal excise tax laws to the same extent as individuals engaged in the same type of competitive enterprise. State of New York v. United States, 66 S.Ct. 310, 90 L.Ed. ——.

The Court, however, in the case last cited carefully differentiated between activities of a proprietary or business nature and those which are strictly governmental in character.

■ The power of eminent domain is a necessary and inherent function of government. Without this power all other powers would be hampered and limited, for it is the only positive means of acquiring property which is needed for public buildings, roads, and all other governmental purposes including, as in the present case, public recreational facilities.

■ It is true that the City has already exercised its power of eminent domain to the extent that it has acquired title to the property and has secured a writ of possession. All that remains is to put the property to the use for which it was intended. However, it is my opinion that any limitation or restriction upon such use which would have the effect of delaying the City in proceeding to obtain immediate possession and full control of the property is an interference with its sovereign power of eminent domain. The power to use freely what has been acquired is inseparable from the power of acquisition.

If plaintiff's contentions were accepted, the result would be that whenever within any area condemned for any sort of public use there might be found a house occupied by a tenant, the governmental body must submit its application to and abide by the decision of the local rent director, who would have authority to postpone the governmental use for a period of time as long as six months. It is conceded that no such authority to delay public improvements would be possessed by the rent director or by any other agency in cases where houses are occupied by the owners thereof at the

time of condemnation. Congress could hardly have intended that the Emergency Price Control Act should extend to such a situation, or create such a discriminatory distinction.

The purposes of the Emergency Price Control Act are stated in Section 1(a) thereof. These were to control prices and prevent inflation during a period in which the United States was at war, and in which, due to scarcity in the supply of commodities and housing accommodations, accompanied by a large increase in the amount of money available for spending by the public, unrestricted bargaining would be expected to result in ruinous inflation. Brown v. Mars, Inc., 8 Cir., 135 F.2d 843. It is true that the powers vested in the Administrator of the Office of Price Administration remain in effect, even though actual hostilities have ceased. It is not for the Court to question the wisdom of Congress in continuing the Act in effect, nor to refrain from giving its sanction to the exercise by the Administrator of such powers as fall within the scope of the Act. On the other hand, the Court will not extend the Act by a strained interpretation which would have the effect of superseding a state's sovereign power of eminent domain, exercised through one of its subdivisions, and subjecting the full use of that power to the discretionary action of a local rent director. See Davies Warehouse Company v. Bowles, 321 U.S. 144, 64 S.Ct. 474, 480, 88 L.Ed. 635, in which Mr. Justice Jackson said: "The existence and force and function of established institutions of local government are always in the consciousness of lawmakers and, while their weight may vary, they may never be completely overlooked in the task of interpretation. At a time when great measures of concentration of direction are concededly necessary, it may be thought more far-sighted to avoid paralyzing or extinguishing local institutions which do not seriously conflict with the central government's place. Congress has given no indication that it would draw all such state authority into the vortex of the war power."

It is my conclusion that the City of Charleston, in acquiring and using the property involved in this case, was under no duty to apply to the area rent director for a certificate under the provisions of the rent regulation for housing, because that regulation has no application to a situation such as this, nor was it the intention of Congress that it should be so applied.

Therefore, the injunction is refused. An order may be entered in accordance with the foregoing opinion.