## UNITED STATES v. UTICA KNITTING CO.
### No. 185, Docket 20893.

Circuit Court of Appeals, Second Circuit.
May 20, 1948.

R. G. Dunmore, Jr., and Ferris, Burgess, Hughes & Dorrance, all of Utica (Thayer Burgess, of Utica, of counsel), for appellant.

Edmund Port, and Irving J. Higbee, U. S. Atty., both of Syracuse, for appellee.

Before L. HAND, SWAN and CLARK, Circuit Judges.

## PER CURIAM.

The only question involved in this case is the meaning of the phrase, "purchaser of the same class," as defined in subdivision (k) of § 20 of the General Maximum Price Regulation[1] as amended,[2] which was issued pursuant to the Emergency Price Control Act of 1942.[3] Section 2(a) of the Regulation fixed as the "ceiling price" "the highest price charged by the seller during March, 1942"; and subdivision 1(a) of § 2 provided that the "highest price" meant "the highest price which the seller charged * * * during March, 1942 to a purchaser of the same class." Section 20 of the Regulation defined the terms used in the preceding sections, and in subdivision (k) a "purchaser of the same class" was defined as we quote in the margin.[4] The defendant was a manufacturer of knitted garments, which did not sell to small retailers; its trade being with wholesalers, jobbers, general stores, large individual retailers and mail-order houses. The case is to be decided as though all its customers were the same "kind of purchasers": i.e. as though the sales in question were made to customers who were all in the same rank in the hierarchy of distribution. The dispute arose because in March 1942, the defendant sold at no fixed price to all members of that "kind," its practice being "to obtain the highest price from any purchaser that the traffic would bear, not lower than the minimum price fixed in instructions to the company's salesmen." After the Regulation went into effect it used as its "ceiling price" to all these purchasers, the highest price at which it had sold to one of them—the Hearn Department Store in New York—although that was higher than that at which it had sold to a number of others in the "kind." The only question in the case is whether it was lawful to take the price charged "Hearn" as the "ceiling" for all.

We recognize that there is a priori a certain awkwardness in treating as though he constituted a "class," one who has been able to secure for himself a lower price from the seller than that accorded his fellow jobbers or wholesalers or chain-store retailers. Perhaps we should have found it impossible to go so far, had it not been for the words, "different purchasers or," in the phrase, "sales to different purchasers or kinds of purchasers." However, it is impossible to see what could have been intended by this alternative, unless it was to set a "ceiling" for each member in any "kind of purchasers," when the seller had not sold at the same price to all in that "kind." Certainly, that result was quite as much forbidden by the purpose of the regulation and of the statute, as to hold down prices which might be uniform throughout a given "kind of purchasers." If the highest price within the "kind" could be fixed by that exacted from the weakest buyer in that "kind," a corresponding margin of increase over March, 1942, would be granted to the seller in trading with the stronger buyers in that "kind." That gave an obvious chance for inflation.

[1] 7 Fed.Reg. 3153.

[2] 7 Fed.Reg. 6615.

[3] Title 50 U.S.C.A. War Appendix, § 901 et seq.

[4] "(k) Purchaser of the Same Class

"'Purchaser of the same class' refers to the practice adopted by the seller in setting different prices for commodities or services for sales to different purchasers or kinds of purchasers (for example, manufacturer, wholesaler, jobber, retailer, government agency, public institution, individual consumer) or for purchasers located in different areas or for different quantities or grades or under different conditions of sale."

622

The construction we accept is that of the Tenth Circuit;[5] the Court of Appeals of the District of Columbia;[6] and the Ninth Circuit.[7]  It happens that these three decisions did concern payments for services, and not for goods, and that as to them there was a special regulation; but the language used in it was the same as in the general regulation before us, and the later interpretation of it was a "clarifying" one.

Judgment affirmed.

---

[5] Bowles v. Nu Way Laundry Co., 10 Cir., 144 F.2d 751, 757.

[6] Rainbow Dyeing & Cleaning Co., Inc., v. Bowles, 80 U.S.App.D.C. 137, 150 F.2d 273.

[7] Bowles v. Wheeler, 9 Cir., 152 F.2d 34, 40.