**UNITED STATES of America,**
**Plaintiff,**

v.

**HILL PACKING COMPANY, Inc.,**
**Defendant.**
**Civ. No. T–515.**

United States District Court
D. Kansas.

March 30, 1955.

Selby S. Soward, Asst. U. S. Atty., Topeka, Kan., for plaintiff.

Crane, Martin & Claussen, Topeka, Kan., for defendant.

WALLACE, District Judge.

The Government brings this action against the defendant, Hill Packing Company, Inc., a Kansas corporation and charges the defendant with certain ceiling price violations in the sale of commodities between April 20 and October 9, 1951, in violation of the Defense Produc-

tion Act of 1950.[1] The Government's "Amended Complaint" urges that overcharges totalling $20,760.25 were made, and asks for treble damages along with reasonable attorney's fees and costs.[2]

The defendant is a producer of horsehides. The hides involved in the controversy are classified into three categories: (1) No. 1 horsehide fronts; (2) No. 2 horsehide fronts; and, (3) No. 1 horsehide butts, 22 inches and up. During the base period of the ceiling price regulations (December 20, 1950 to January 25, 1951) hides of all three types were delivered to different purchasers at varying prices.[3] The alleged ceiling price violation occurred as a result of numerous sales made subsequent to the base period wherein the defendant charged the highest price obtained for each of the three separately classified commodities during the base period. No. 1 horsehide fronts were sold for $12; No. 2 horsehide fronts were sold for $11.50; and, No. 1 horsehide butts, 22" and up, were sold for $5.50.[4]

The Government asserts that inasmuch as during the base period defendant sold each of these three types of commodities for different prices to various purchasers that such disparity in the sales prices placed the different purchasers in "separate classes"; and, therefore, subsequent to the base period, the applicable

1. See 50 U.S.C.A.Appendix, § 2061 et seq.; and, § 2109 in particular.

2. Read 50 U.S.C.A.Appendix, § 2109(c).

4. As will be noted in footnote 3, supra, these were the prices charged A. Jacobshagen Company toward the end of the base period.

3. The highest prices paid by the various purchasers during the base period were:

No. 1 horsehide fronts.

| A. Jacobshagen Company | $12.00 |
|---|---|
| Herman Hollander | 9.50 |
| Allied Kid Glove Company | 11.50 |
| Illinois Glove Company | 8.75 |

No. 2 horsehide fronts.

| A. Jacobshagen Company | $11.50 |
|---|---|
| Herman Hollander | 9.00 |
| Illinois Glove Company | 8.25 |

No. 1 horsehide butts, 22" and up.

| S. B. Foot Tanning Company | $ 5.00 |
|---|---|
| Harween Leather Company | 5.00 |
| A. Jacobshagen Company | 5.50 |

ceiling price to each purchaser was the highest price each such customer paid during the base period.[5]

From the oral testimony, the introduced stipulation and the submitted briefs, the Court has concluded that the defendant's sales were not at prices above ceiling.

The Government's evidence fails to establish by the proper measure of proof that the different purchasers of hides received special discounts or purchased at different prices during the base period so as to place the various purchasers in separate classes. Although hides of the same grade and description were delivered at the same time in the base period at different prices, such, of itself, does not establish that the purchasers were in different classes inasmuch as the evidence shows that the amount of the purchase price was fixed by contract prior to delivery and payment; and, that the time between the contract to purchase and the consummation of the sale varied in each individual transaction.[6] Thus, the submitted stipulation which indicates that different prices were collected from different purchasers of the same class commodity even on the same day during the base period does not, of itself, prove that the customer paying the lesser amount was given special consideration, or a special discount, placing such customers in separate classes. That such evidence alone cannot establish preferential treatment is emphasized by the fact that in one instance two shipments of the same grade hides were delivered to the same purchaser on the same day at two different prices.[7]

Defendant's testimony showed that during the base period there was a shortage of available horsehides; and, that as a result, toward the end of the base period, defendant increased its asking price. Although the higher price was only obtained from one purchaser the prices on all three commodities as to all prospective customers was raised. Notice of such increase was given over the telephone in the regular course of business to the various customers. This is a practice regularly followed by the defendant due to the very limited number of prospective purchasers of defendant's product.

The Government's lack of definite proof that special consideration was given to different purchasers buying identical commodities at the same time in the base period coupled with defendant's evidence that toward the end of the base period the price was raised to all purchasers alike, although only one purchaser bought at the increased price, warrants the conclusion that all of defendant's customers were of the same class;

---

5. The Government relies upon Bowles v. Nu Way Laundry Co., 10 Cir., 1944, 144 F.2d 741, 747, wherein it was ruled that in determining whether purchasers of the same class were involved " * * * the test is not necessarily whether customers were purchasing the same service in the same area during the same period of time, but whether the said purchasers were paying the same prices for the same services during the base period" and that where different prices were charged for the same service separate classes were established. Accord, United States v. Utica Knitting Co., 2 Cir., 1948, 168 F.2d 620, 621. Cf. Rainbow Dyeing & Cleaning Co. v. Bowles, 1945, 80 U.S.App.D.C. 137, 150 F.2d 273.

6. Most of defendant's sales were made over the telephone; and, confirmed by the buyer immediately thereafter by letter. Examples of the difference between the contract date and date of shipment or delivery are: (1) Alfred Jacobshagen Co. confirmation of November 9, 1950, with "December delivery"; (2) Herman Hollander Inc. confirmation of December 29, 1950, with shipment to be in "January, 1951"; (3) Alfred Jacobshagen Co. confirmation of November 16, 1950, with shipment to be "Late December 1950–January 1951"; (4) Allied Kid Co. confirmation of January 19, 1951, with delivery "Est. ⅔ weeks"; and, (5) Illinois Glove Co. confirmation of November 21, 1950, with delivery by "first of January". (See exhibits A–E attached to Stipulation).

7. Paragraph 5 of the Stipulation shows that on January 25, 1951, Jacobshagen Co. paid $5.00 for No. 1 horsehide butts, 22" and up, under Invoice No. S–09313; and paid $5.50 for the same class commodity under Invoice No. S–09314.

and, under the regulations the defendant was authorized to charge, for each type commodity, the highest price obtained during the base period.[8]

The defendant is entitled to judgment.

Within 15 days counsel should submit a journal entry which conforms with this opinion.

---

8. As stated in General Ceiling Price Regulation, Section 3: " * * * Your ceiling price for sale of a commodity or service is the highest price at which you delivered it during the base period to a purchaser of the same class."